Ilya and Rozita GERTNER, Plaintiffs,

v.

**FEDERAL DEPOSIT INSURANCE
CORPORATION and the United
States of America, Defendants.**

Civ. A. No. 91–10129–T.

United States District Court,
D. Massachusetts.

July 6, 1992.

Ilya Gertner, pro se.

Rozita Gertner, pro se.

John Christopher Foskett, Daniel Rodger
Deutsch, Deutsch, Williams, Brooks, DeRen-
sis, Holland & Drachman, Christine Marie
Roach, Kern, Sosman, Hagerty, Roach &
Carpenter, Boston, MA, Jeffrey M. Nadaner,
U.S. Dept. of Justice, Torts Branch, Wash-
ington, DC, for defendants.

## MEMORANDUM

TAURO, Chief Judge.

Plaintiffs, Ilya and Rozita Gertner, pro-
ceeding *pro se*, bring this action against the
Federal Deposit Insurance Corporation

("FDIC"), as receiver for the Home National Bank ("Bank"), to recover damages on account of a mortgage commitment that the FDIC refused to honor. Plaintiffs believe that the FDIC misrepresented the status of their claim to them and then wrongfully disallowed it.

## I.

Plaintiffs contend that, on October 24, 1989, they made an offer on an unfinished residential home being sold by the Bank. Plaintiffs made the offer "subject to [the Bank's] agreeing to provide 8.9% financing." Plaintiffs claim that the Bank advertised the property for sale in conjunction with an offer of below-market financing, and that the advertising induced them to purchase the property from the Bank. Compl. ¶ 4. On December 7, 1989, plaintiffs closed on the property. At that time, however, the Bank did not make a conventional mortgage commitment to the plaintiffs. Instead, the Bank gave plaintiffs a construction loan secured by a promissory note payable on May 30, 1990.

The Bank's mortgage commitment to the plaintiff came later, in the form of a letter dated February 16, 1990. The letter offered a mortgage payable over 30 years, at a rate of 8.9%. Plaintiffs accepted this offer, and a closing date was set for June 15, 1990.

On June 1, 1990, the Bank was declared insolvent and the FDIC took over. The FDIC disaffirmed the mortgage agreement with plaintiffs. Defendant John Adams, of the FDIC, allegedly advised plaintiffs to seek alternative financing and then file a Proof of Claim form with the FDIC. Compl. ¶ 4. He allegedly assured the plaintiffs that the FDIC would reimburse them for any loss.

Plaintiffs thereafter obtained mortgage financing at a higher rate than that which the Bank, prior to its failure, had promised them. They claim that this cost them $160,005.79. Plaintiffs filed a Proof of Claim in this amount and, on November 13, 1990, the FDIC disallowed it. On January 14, 1991, plaintiffs filed suit against the FDIC.

At a hearing on Defendant FDIC's Motion for Summary Judgment, the plaintiffs informed the court that they have tried relentlessly to obtain information from the FDIC about their claim. They, therefore, requested further discovery. Accordingly, the court ordered the FDIC to produce, for *in camera* inspection, all documents related to the plaintiffs' claim. The defendants have done that, and after reviewing them, the court determines that the FDIC has turned over to the plaintiffs all documents that are relevant to their claim, except those that implicate the attorney-client privilege. The court will now address the United States' Motion to Dismiss and the FDIC's Motion for Summary Judgment.

## II.

Plaintiffs' Complaint alleges two causes of action. First, plaintiffs claim that the employees of the FDIC misrepresented to them that the FDIC would reimburse them for any losses they incurred in obtaining a second loan. Second, plaintiffs contest the decision of the FDIC, in its capacity as receiver of the Bank, to disallow plaintiffs' Proof of Claim pursuant to the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA"), 12 U.S.C. § 1821 *et seq.*

### A. Tort Claim

■ Plaintiffs initially brought this claim for misrepresentation against FDIC employees. 28 U.S.C. § 2679(b)(1) provides, however, that individual federal employees acting within the scope of their employment may not be sued individually for common law torts. Rather, a plaintiff's exclusive remedy lies against the United States.

The plaintiffs claim that a question of fact exists as to whether these employees were acting within the scope of their employment. But, 28 U.S.C. § 2679(d)(1) provides that, upon certification by the Attorney General that a defendant employee was acting within the scope of his employment at the time of the incident out of which the suit arose, the proceeding is deemed a tort action brought against the United States.[1] The United

---

1. 28 U.S.C. § 2679(d)(1) provides that

Upon certification by the Attorney General that the defendant employee was acting within the

States has filed such a certificate. There is no dispute, moreover, that plaintiffs sue the employees here for statements they made as FDIC agents. Accordingly, pursuant § 2679, this court ALLOWS the Motion of the United States to Substitute as the Proper Defendant.

■ The court next determines that plaintiffs cannot maintain an action for misrepresentation against the United States. The Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671–2680, which is a limited waiver of sovereign immunity for certain tort claims, specifically bars an action against the United States for misrepresentation. 28 U.S.C. § 2680(h); *Santoni v. FDIC*, 677 F.2d 174, 179 (1st Cir.1982) ("Appellants' action sounds in tort for misrepresentation, deceit or abuse of discretion, and is therefore barred by the FTCA.").

The United States' Motion to Dismiss is, therefore, ALLOWED.[2]

B. FIRREA Claim

■ Plaintiffs do not dispute the power of the FDIC to disaffirm contracts. The only issue, therefore, is whether plaintiffs are entitled to damages for the disaffirmance.

FIRREA states that the liability of the receiver for the disaffirmance or repudiation of any contract "shall be (i) limited to actual direct compensatory damages; and (ii) determined as of (I) the date of the appointment of the conservator or receiver...." 12 U.S.C. § 1821(e)(3)(A). FIRREA further states that "the term 'actual direct compensatory damages' does not include (i) punitive or exemplary damages; (ii) damages for lost profits or opportunity; or (iii) damages for pain and suffering." *Id.* § 1821(e)(3)(B).

■ FDIC claims that, when it became the receiver for the Bank on June 1, 1990,

"plaintiffs had yet to expend any funds on alternative financing." Memo. in Support of Mot. for Summ.J. at 3. The FDIC is only liable, as a receiver of the Bank, for actual direct compensatory damages determined as of the date of the appointment of the receiver. Plaintiffs present no evidence that, on June 1, 1990, they had suffered damages, and cannot, therefore, recover from the FDIC for damages later suffered.

■ Plaintiffs additionally state that, after the Bank became insolvent, the FDIC represented to them that the FDIC would still honor the mortgage. Federal statute, incorporating the *D'Oench, Duhme* doctrine,[3] bars this argument. *See* 12 U.S.C. § 1823(e) (the doctrine of estoppel precludes former bank customers from relying, for purposes of a claim against the receiver, on any representations or agreements with bank officials which were not reduced to writing and maintained as part of the permanent bank record).

### III.

Accordingly, Defendant United States' Motion to Dismiss is ALLOWED and Defendant FDIC's Motion for Summary Judgment is ALLOWED.

---

scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a United States district court shall be deemed an action against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant.

**2.** The court also dismisses any action against the FDIC in its corporate capacity for tort because it is "well established that federal agencies are not subject to suit in their own name...." *See Murray v. United States Postal Service*, 550 F.Supp. 1211, 1212 (D.Mass.1982).

**3.** *See D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942).