**OFFICE AND PROFESSIONAL EMPLOYEES INT'L UNION, LOCAL 2, et al., Plaintiffs,**

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION, Defendant.**

Civ. A. No. 91–0795 (CRR).

United States District Court, District of Columbia.

Feb. 2, 1993.

David R. Levinson, Washington, DC, with whom Joseph E. Finley, Baltimore, MD, and Professor Lucinda Finley, Buffalo, NY, were on the brief, for plaintiffs.

Kenneth I. Jonson of Steptoe & Johnson, Washington, DC, with whom Frederick J. Horne was on the brief, for defendant.

CHARLES R. RICHEY, District Judge.

## TABLE OF CONTENTS

I.   INTRODUCTION ........................................................ 41
II.  BACKGROUND ......................................................... 41
III. DISCUSSION .......................................................... 42
  A.  Because the plain language of the FIRREA statute provides that damages for the repudiated agreement are to be measured when the receiver is appointed and not when the agreement is actually repudiated, the Plaintiffs are not entitled to recover for damages incurred after the receiver's appointment. ......................... 42
  B.  Courts interpreting the plain language of the FIRREA statute have used the appointment of the receiver as the time for measuring damages from contract repudiation. .............................. 44
  C.  Because the bank employees' rights to severance pay had not accrued at the time of the appointment of the receiver, the claims are not cognizable under the terms of the FIRREA statute. ......... 45

D. *Because the FIRREA statute makes the repudiation effective as of the date of the receiver's appointment, the receiver's fiduciary duties under ERISA do not require it to pay severance claims for the subsequent termination.* ........................................ 47

IV. CONCLUSION ..................................................... 48

## I. INTRODUCTION

The above-captioned case comes before the Court on the Defendant's Motion for Summary Judgment and the Plaintiffs' Motion for Partial Summary Judgment. At issue in the case is whether the Defendant, as receiver for an insolvent bank, is liable for severance pay allegedly owed the bank's former employees. The employees were terminated by the receiver after the bank went into receivership, but before the receiver used its statutory powers to formally repudiate the collective bargaining agreement under which the severance pay claim arose. Upon consideration of the Defendant's Motion, the Plaintiffs' Motion, the opposition thereto, the applicable law and the record herein, the Court must grant the Defendant's Motion and deny the Plaintiffs' Motion because the Defendant is not bound by the terms of the severance agreement entered into before the Defendant became the receiver for the insolvent bank. *See* Fed.R.Civ.P. 56.

The results of this case are mandated by the fundamental purpose of the Financial Institutions Reform, Recovery and Enforcement Act ("FIRREA"): to "promote the orderly administration of the institution's affairs" by repudiating contracts which would be "burdensome" to perform. 12 U.S.C. § 1821(e). To this end, the Congress has granted broad powers to receivers. The Plaintiffs have not cited, nor has the Court discovered, any reference in the statute or its legislative history to the issue of bank employee benefits or to any possible exception to the general powers of a receiver to repudiate the contracts of an insolvent institution when employee bene-fits are concerned. Consequently, the Court cannot construct such an exception in this case.

## II. BACKGROUND

The facts of the case are relatively straightforward. The Office & Professional Employees International Union, Local 2 ("the Union"), along with a number of individual Plaintiffs, brought suit against Federal Deposit Insurance Corporation ("the FDIC") as receiver for the National Bank of Washington ("the Bank"). The individual Plaintiffs are former employees of the Bank. The individuals and the Union were parties to a collective bargaining agreement with the Bank that was in effect during August 1990. The collective bargaining agreement provided, *inter alia,* for severance pay in the event of staff reductions due to economic reasons.[1]

On August 1, 1990, the Comptroller of the Currency placed the Bank in conservatorship and appointed a Conservator pursuant to 12 U.S.C. § 203. On August 10, 1990, the Comptroller of the Currency terminated the conservatorship, declared the Bank insolvent, and appointed the FDIC as receiver pursuant to 12 U.S.C. §§ 191, 1821(c). The FDIC, acting as receiver and in preparation for a sale of the Bank, terminated the employment of the Bank's employees on the same day. On August 14, 1990, the FDIC notified an official of the Union that the FDIC was repudiating the collective bargaining agreement then in existence between the Bank and the Union and the employees. A similar notice, in written form, was sent to the Union on

---

1. The agreement also provided for vacation pay and health benefits, both of which were at issue during the conduct of this suit. Based on the representations of the parties that those claims have been processed administratively by the FDIC, the Court understands these benefits to no longer be in controversy in the case. *See* Plaintiff's Trial Cert. Sheet, July 10, 1992; Defendant's Trial Cert. Sheet, July 10, 1992; *see also Office and Professional Employees Int'l Union, Local 2, v. Federal Deposit Ins. Corp.,* 962 F.2d 63 (D.C.Cir.1992).

August 29, 1990.[2] The parties do not dispute that the FDIC, through its role as the Bank's receiver, was entitled to repudiate the collective bargaining agreement. *See* 12 U.S.C. § 1821(e).

After the termination, the bank employees sought to recover the severance pay to which they were allegedly entitled under the collective bargaining agreement. The employees filed appropriate claims with the FDIC in accordance with 12 U.S.C. § 1821. The FDIC declined to honor the severance pay claims.[3] The Plaintiffs brought suit pursuant to 12 U.S.C. § 1821(d)(6), seeking to recover the severance pay as outlined in the collective bargaining agreement. Plaintiffs assert that both the FIRREA statute, 12 U.S.C. § 1821, and the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, provide for the enforcement of the Plaintiff's severance pay claims. The case, which originally only involved the Union, was dismissed by this Court on November 30, 1990, on the grounds that the Union lacked standing to raise the claims of the employees. This Court's decision was reversed and remanded by the Court of Appeals, 962 F.2d 63 (D.C.Cir.1992). After remand, the case was consolidated with another action involving similar claims by other employees.[4] The Defendant has filed a Motion for Summary Judgment, claiming that it is not liable for the severance pay. The Plaintiffs have responded, and also seek summary judgment.

Summary judgment is awarded when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–49, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Where there is a properly supported motion for summary judgment, the adverse party may not rest upon the "mere allegations or denials" of its pleadings, but must set forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *see Lujan v. National Wildlife Federation,* 497 U.S. 871, 110 S.Ct. 3177, 3188–89, 111 L.Ed.2d 695 (1990). The moving party is also entitled to summary judgment upon a showing that there is an absence of evidence supporting an essential element of the non-moving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In this case, the statutes in question do not provide for the recovery of severance pay under the facts as set forth by the Plaintiffs. Consequently, the Defendant is entitled to summary judgment.

## III. DISCUSSION

A. *Because the plain language of the FIRREA statute provides that damages for the repudiated agreement are to be measured when the receiver is appointed and not when the agreement is actually repudiated, the Plaintiffs are not entitled to recover for damages incurred after the receiver's appointment.*

FIRREA was passed by Congress "as a response to the growing crisis in the nation's banking and savings and loan industries." *Telematics Int'l, Inc. v. NEMLC Leasing Corp.,* 967 F.2d 703, 705 (1st Cir.1992). The statute confers broad powers on receivers. *Gross v. Bell Sav. Bank,* 974 F.2d 403, 407 (3rd Cir.1992). 12

**2.** Although the Plaintiffs question whether this notice was ever actually received, they do not dispute the existence of the letter. They agree that whether the written notice was received in August 1990, as the Defendant contends, or March 1991, as they contend, makes no difference.

**3.** At the time, the FDIC gave three different reasons to the employees for its disallowance of the claims. Because the Court agrees with the FDIC that the effect of repudiation related back to the time of the appointment of the FDIC as receiver, *see infra* at III.A. and III.B., it need not

consider the validity of the other reasons given by the FDIC for its disallowance of the severance pay claims.

**4.** Although not all the employees acted in a timely fashion in filing claims with the FDIC or authorizing the Union to act on their behalf, the parties stipulated that late claims would be considered as if they had been filed in both a timely and proper manner. *See Stipulation,* May 21, 1992. The FDIC considered and processed all of the late claims accordingly.

U.S.C. § 1821(e), the relevant portion of the statute, governs contracts entered into by a bank before the appointment of a receiver. The interpretation of the statute best begins with the words contained within the statute. *See Bayshore Exec. Plaza Partnership v. FDIC,* 943 F.2d 1290, 1292 (11th Cir.1991) (applying the statute at issue in the instant case).

■ 12 U.S.C. § 1821(e)(1) provides, in relevant part, that:

[A] receiver for any insured depository institution may disaffirm or repudiate any contract or lease ... the performance of which the ... receiver ... determines to be burdensome; and the disaffirmance or repudiation of which the ... receiver determines ... will promote the orderly administration of the institution's affairs.

The receiver must decide whether to repudiate a preexisting contract "within a reasonable period" following the appointment of the receiver. § 1821(e)(2).[5]

In the instant case, the FDIC determined, in accordance with § 1821(e)(1), that the Bank's continued performance under the collective bargaining agreement would be burdensome and that repudiation of the agreement would assist in the administration of the receivership. Therefore, the agreement was repudiated. Exactly when the repudiation occurred is disputed by the parties. However, the determination of whether the repudiation took place upon notice to the employees, as the Defendant contends, or upon notice to the Union, as the Plaintiffs contend, is not material to the decision reached by the Court today. The Court assumes that the repudiation was made on August 14, the date the Union was informed of the FDIC's decision to repudiate the contract.

A receiver may not repudiate a contract with impunity. The receivership will be liable for damages caused by the repudiation, but that liability will be "limited to actual direct compensatory damages...." § 1821(e)(3)(A)(i). Punitive damages, lost profits, and damages for pain and suffering are not recoverable. § 1821(e)(3)(B). Furthermore, the liability of the receiver for repudiated contracts is to be "determined as of the date of the appointment of the ... receiver." § 1821(e)(3)(A)(ii)(I). It is to this last provision that the parties assign different meanings.

The Defendant contends that the provision means that, when a contract is timely repudiated during the receivership, the receiver will be liable for actual damages to rights vested and final at the time of the receiver's appointment. Claims arising after the appointment and before the repudiation are not cognizable under the statute. In other words, repudiation of a contract within a reasonable time of the appointment of the receiver "relates back" to the appointment of the receiver. Defendant's Sur–Reply Memorandum, at 1. Only those damages to which the Plaintiffs were entitled at the time of appointment may be recovered.

The Court finds that the words and structure of the statute support the Defendant's straightforward interpretation of the statute. First, § 1821(e)(3)(A)(ii)(I) limits the recoverable damages from a breach to those *"determined* as of the date of the appointment,"* (emphasis added), not those which are *determinable.* This language suggests that the claims must be actual, not hypothetical, at the time of appointment.

Second, § 1821(e) contains other provisions, not applicable here, which specify the times at which damages should be measured *after* the appointment of the receiver. Logical consistency suggests that, had the drafters intended § 1821(e)(3)(A)(ii)(I) to apply to damages arising after appointment but before repudiation, they would have said so explicitly, as the drafters did in other parts of § 1821(e).

For example, § 1821(e)(3)(A)(ii)(II), the provision immediately following the one at issue in this case, deals with special liabili-

---

5. Although there is some dispute as to when the repudiation took place in this case, the Plaintiffs do not suggest that the Defendant's decision to repudiate the collective bargaining agreement fell outside this reasonable time period.

ties known as qualified financial contracts (securities and commodities contracts, etc.). When a receiver repudiates a qualified financial contract, the receiver's liability is determined as of "the date of the disaffirmance or repudiation of such contract. . . ." So, in the instance of qualified financial contracts, liability arising after the appointment is recoverable under the explicit terms of the statute.

Another provision, § 1821(e)(4), deals with leases under which the financial institution is the lessee. The receiver may repudiate these leases, but must pay damages for rent accruing up to the point "the notice of disaffirmance or repudiation is mailed." [6] So, in this instance also, liability arising after the appointment of the receiver is recoverable.

A final provision, § 1821(e)(7), is particularly enlightening. The provision deals with service contracts in force at the time the receiver is appointed. § 1821(e)(7) provides that claims for services rendered *prior* to the appointment are recoverable, but that services rendered *after* the appointment give rise to a claim only if the receiver accepts performance. So, if the receiver acts affirmatively, the service provider's post-appointment claims are recoverable; otherwise, the claims are limited to those accruing before the appointment.

· As can be seen by the foregoing examples, § 1821(e) specifies, in a variety of contexts, the particular time at which damages for the repudiation of various contracts should be measured. In light of the particular language used in these other contexts, this Court has no reason to believe that liability "determined as of the date of the appointment" includes liability arising after that time. *Cf. Pioneer Bank and Trust Co. v. Resolution Trust Corp.*, 793 F.Supp. 828, 831 (N.D.Ill.1992) (Congress intended FIRREA "to shield a receiver from damages incurred *because* of a contract or lease repudiation, but not from damages for existing obligations" of the insolvent bank.). The Plaintiffs' contention

that a claim for damages can arise after appointment but prior to formal repudiation of the contract is not supported by the terms of the statute.

**B.** *Courts interpreting the plain language of the FIRREA statute have used the appointment of the receiver as the time for measuring damages from contract repudiation.*

The conclusion that liability should be measured at the moment of appointment, rather than repudiation, is consistent with cases that have construed § 1821(e) and federal banking law. Although no case, so far as the Court can determine, has directly addressed the validity of severance pay claims, a few have considered other applications of § 1821(e). In *Gertner v. FDIC*, 814 F.Supp. 177 (D.Mass.1992), the FDIC repudiated a mortgage agreement that had been made by a bank prior to its insolvency. The Court found that the plaintiffs were not entitled to damages arising after the appointment. As that Court stated,

> [t]he FDIC is only liable, as a receiver of the Bank, for actual direct compensatory damages determined as of the date of the appointment of the receiver. *Plaintiffs present no evidence that, on June 1, 1990 [the date the Bank had been declared insolvent and the FDIC had been appointed], they had suffered damages, and cannot, therefore, recover from the FDIC for damages later suffered.*

*Id.*, at 179 (emphasis added). The language of *Gertner* strongly suggests that the applicable measuring moment is the appointment of the receiver.

Other cases also recognize the moment of insolvency as the crucial measuring time for damages. In *Bayshore Exec. Plaza Partnership v. FDIC*, 750 F.Supp. 507 (S.D.Fla.1990), *aff'd*, 943 F.2d 1290 (11th Cir.1991), the Court held that the lessor was not entitled to recover claims for future rent under a lease repudiated by the receiver for an insolvent bank. In so hold-

---

**6.** The lessor may also be able to recover for rent after the repudiation is mailed under certain conditions. *See* § 1821(e)(4)(B)(i)(II).

ing, the Court stated that "the rights and liabilities of a bank and the bank's debtors and creditors are unconditionally fixed at the declaration of the bank's insolvency." *Id.* at 511; *accord American Nat'l Bank of Jacksonville v. FDIC,* 710 F.2d 1528, 1540 (11th Cir.1983). *See also 701 NPB Assoc. v. FDIC,* 779 F.Supp. 1336, 1341 (S.D.Fla.1991).

The conclusion that damages are fixed at appointment has also been reached by the 10th Circuit. In *Dababneh v. FDIC,* 971 F.2d 428 (10th Cir.1992), another claim for future rent was at issue. The Court denied the claim, agreeing with the long-standing 1st Circuit position that claims against national banks in receivership "must have accrued and become unconditionally fixed on or before the time [the bank] was declared insolvent." *Id.* at 434 (quoting *Kennedy v. Boston–Continental Nat'l Bank,* 84 F.2d 592, 596 (1st Cir.1936)). Thus, a number of courts have held, consistent with the terms of the statute, that the crucial moment for measuring damages is the appointment of the receiver.

Plaintiffs' reliance on *Citizen's State Bank of Lometa v. FDIC,* 946 F.2d 408 (5th Cir.1991), is misplaced. In that case, the 5th Circuit held that standby letters of credit issued prior to the issuing bank's insolvency, but not drawn upon until after the insolvency, were entitled to some measure of dividend from the dissolution of the bank's assets. *Id.* at 415–16.

However, the *Citizen's State Bank* case and the other letters of credit cases relied upon by the Plaintiffs, differ significantly from the instant case. In those cases, the banks had already contractually agreed to make payment pursuant to the letters when those letters were presented. In other words, the banks had obligated themselves, before the insolvency, to honor the claims of the holders.

In the instant case, the Bank, although agreeing to provide severance pay if it terminated employees as part of a reduction in force, had not yet taken that step at the time of the receiver's appointment. Because the Bank did not obligate itself to give severance pay until it terminated the employees, and because the termination did not occur until after the appointment, the Plaintiffs cannot show that the severance pay claims "existed before the [ ] bank's insolvency and did not depend on any new contractual obligation arising later...." *Id.* at 412; *accord First Empire Bank–New York v. FDIC,* 572 F.2d 1361 (9th Cir.), *cert. denied,* 439 U.S. 919, 99 S.Ct. 293, 58 L.Ed.2d 265 (1978). Plaintiffs' claims must be denied because they were contingent at the time of insolvency, being dependent on a subsequent action of the Bank or receiver.

C. *Because the bank employees' rights to severance pay had not accrued at the time of the appointment of the receiver, the claims are not cognizable under the terms of the FIRREA statute.*

■ The parties agree that the employees' right to severance pay vested upon termination. That is, the employees' termination was the action giving rise to the claim for severance pay. *See* Plaintiff's Memorandum in Support of Motion, at 16; Defendant's Memorandum in Support of Motion, at 6. Prior to the termination, the right to severance pay was contingent. For example, had the employees quit, rather than been terminated, they would not have received any severance pay. Instead, it was the act of termination that activated the right to severance pay under the collective bargaining agreement.

The record clearly indicates that the receiver terminated the employees *after* the receiver was appointed.[7] Thus, at the time

---

**7.** The Court is unconvinced by the Plaintiffs' suggestion that the FDIC terminated the employees before it assumed its role as receiver. Plaintiffs' Reply Memorandum, at 4–5. The Court adopts the common sense view that the FDIC, which terminated the employees, could not and did not do so until after its appointment as receiver. The Court also notes that the Plaintiffs admitted that the FDIC, as receiver, terminated the employment of all employees on August 10, 1990. *See* Defendant's Statement of Material Facts, # 6; Plaintiffs' Statement of Material Facts, at 1 (agreeing with # 6).

of the receiver's appointment, none of the employees possessed a right to severance pay. Any claims they might have raised at the time were uncertain. A number of things might have happened. The receiver could have retained the employees and accepted their continued services under 12 U.S.C. § 1821(e)(7), the provision dealing with service contracts, and no severance pay would have been owed. The employees might have left the Bank voluntarily, and no severance pay would have been owed. In short, at the time of appointment, the employees could not have claimed severance pay under the collective bargaining agreement.

As discussed in III.A and III.B., *supra*, the receiver's liability for repudiated contracts is limited to actual compensatory damages determined when the receiver is appointed. In this case, when the receiver was appointed, the termination giving rise to the claim for severance pay had not yet occurred. Thus, under the terms of the statute, the former employees have no claim to severance pay, because the collective bargaining agreement was repudiated, and no claims for severance pay had vested at the time the receiver was appointed.

The Court does not accept the Plaintiffs' argument that, because the terminations occurred on August 10, 1990, the same day as the appointment of the receiver, the employees may recover under § 1821(e)(3). *See* Plaintiffs' Reply Memorandum, at 15–17. Plaintiff argues that, so long as the severance pay claim vested on the same day as the appointment, it does not matter whether the claim vested before or after the actual appointment.

Although the statute uses the phrase "the date of the appointment" as the time at which all damages should be measured, there is no evidence that Congress intended the phrase to extend the potential liability of the receiver past the time of appointment. The Court can find no rationale for assigning Congress such an intent. In fact, the statute contains phrases similar to "the date of the appointment" in subsections specifically dealing with matters occurring *prior to* the appointment. *See,*

*e.g.,* § 1821(e)(7) (claims for services performed *before* appointment are deemed to have arisen as of the date of appointment). Further, in the case of qualified financial contracts, the statute limits damages to those determined as of *"the date of the disaffirmance or repudiation."* § 1821(e)(3)(A)(ii)(II) (emphasis added). Under Plaintiffs' interpretation, the receiver would be liable for damages occurring even *after* formal repudiation of a qualified financial contract, if the damages occurred on the same date as the repudiation. Such a conclusion is inconsistent with the purposes of the receiver's repudiation power and with the concept of limiting the damages from a repudiated contract. So, the Plaintiffs' argument that, because the termination occurred on the same day as the appointment of the receiver, they can recover severance pay under the collective bargaining agreement, must fail.

The Court is not convinced by Plaintiffs' further argument that the employees' termination was an "acceptance" by the receiver of performance of a service contract pursuant to § 1821(e)(7)(B) and the severance pay claim stemming therefrom should be treated as an administrative expense. First, the only case support given by the Plaintiffs involves what priority courts should afford severance pay claims under the bankruptcy laws. A different statute is at issue here, and the cases relied upon by the Plaintiffs are not applicable. The FIRREA statute clearly applies only to services provided after appointment and prior to repudiation that are accepted by the receiver. Severance pay does not fall within the coverage of the new statutory language, and it is not recoverable.

Second, to suggest that the FDIC accepted the continued service of the bank employees by terminating them makes no sense. Had the FDIC retained the employees to smooth the transition to new ownership of the Bank, it clearly would have accepted post-appointment services and would be obligated to pay for those services as administrative expenses under § 1821(e)(7)(B). However, the FDIC did not do so; in fact, it did the opposite. The

FDIC terminated the employees on the same day it was appointed receiver. The Court cannot accept Plaintiffs' argument that immediate termination is equivalent to continued performance under the terms of the statute. Such an interpretation is inconsistent with "the assumption that the ordinary meaning of that [statutory] language accurately expresses the legislative purpose." *Park 'N Fly, Inc. v. Dollar Park 'N Fly, Inc.*, 469 U.S. 189, 194, 105 S.Ct. 658, 661, 83 L.Ed.2d 582 (1985).

D. *Because the FIRREA statute makes the repudiation effective as of the date of the receiver's appointment, the receiver's fiduciary duties under ERISA do not require it to pay severance claims for the subsequent termination.*

■ The Plaintiffs argue that, notwithstanding the repudiation power described in § 1821(e), the FDIC is still obligated to pay the severance claims. Plaintiffs claim that the statutory requirements of ERISA, 29 U.S.C. §§ 1001–1461, prohibit the Defendant from altering the severance benefits owed the employees.

There is no dispute that the severance pay provision of the collective bargaining agreement was an ERISA welfare benefit plan. *See Deibler . v. United Food and Commercial Workers' Local Union 23*, 973 F.2d 206, 209 (3rd Cir.1992); *Reichelt v. Emhart Corp.*, 921 F.2d 425, 430 (2nd Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 2854, 115 L.Ed.2d 1022 (1991); *Adams v. Avondale Indus., Inc.*, 905 F.2d 943, 947 (6th Cir.), *cert. denied*, 498 U.S. 984, 111 S.Ct. 517, 112 L.Ed.2d 529 (1990). The administrator of such a welfare benefit plan must comply with certain fiduciary responsibility requirements. 29 U.S.C. §§ 1101–1114; *Adams*, 905 F.2d at 947. In this case, the Bank served as plan administrator. Plaintiffs submit that the FDIC, as receiver, assumed the Bank's responsibilities as administrator. The Court assumes, for purposes of the instant motions, that the FDIC became the plan administrator when it was appointed receiver.

■ The Plaintiffs concede, as they must, that an employer/administrator may, consistent with its fiduciary duties, terminate a severance plan "at a time when the right to benefits under such a plan remains contingent, or non-vested." Plaintiffs' Memorandum in Support, at 24. The rationale for this principle is that, in the context of terminating severance plans, the employer/administrator is acting as an employer, and not as a plan administrator. *Hozier v. Midwest Fasteners, Inc.*, 908 F.2d 1155, 1161 (3rd Cir.1990). Consequently, no fiduciary duties attach to the termination of severance plans.

Further, the Court notes that ERISA does not provide guarantees for particular severance packages. "ERISA is not a direction to employers as to what benefits to grant their employees. Rather, ERISA is concerned with the *administration* of an established plan and its elements." *Anthuis v. Colt Indus. Operating Corp.*, 971 F.2d 999, 1006 (3rd Cir.1992) (quoting *Hlinka v. Bethlehem Steel Corp.*, 863 F.2d 279, 283 (3rd Cir.1988)). The statutory power of the receiver to repudiate burdensome contracts does not interfere, as a general matter, with the administration of an established ERISA plan.

However, Plaintiffs argue that employers who terminate severance plans retroactively, thereby depriving the former employees of vested severance benefits, violate their fiduciary obligations as administrator. *See Deibler*, 973 F.2d at 211; *Phillips v. Amoco Oil Co.*, 799 F.2d 1464, 1471 (11th Cir.1986), *cert. denied*, 481 U.S. 1016, 107 S.Ct. 1893, 95 L.Ed.2d 500 (1987). The Plaintiffs' argument fails to consider the purpose and effect of 12 U.S.C. § 1821(e). As the Court has explained, *see supra* III. A.–III.C., the repudiation of the collective bargaining agreement relates back to the appointment of the receiver pursuant to 12 U.S.C. § 1821(e)(3). Consequently, no severance claims had vested and the FDIC, as plan administrator, was free to terminate the severance plan without violating the fiduciary requirements of ERISA.

■ The Plaintiffs claim that "ERISA prohibits what Defendant has sought to do

here." Plaintiffs' Memorandum in Support, at 27. However, the two statutes involved do not conflict. ERISA does not forbid the retroactive termination of severance pay. Rather, courts have construed retroactive termination to be a breach of the fiduciary duties of the administrator. *See Deibler*, 973 F.2d at 211; *Phillips*, 799 F.2d at 1471. FIRREA may be read as permitting, in the context of a bank receivership, what might otherwise be a breach of fiduciary duty under ERISA. FIRREA enables the receiver to makes decisions in its role as receiver and outside of its role as administrator, just as an employer/administrator may act as an employer in certain contexts. *See* Plaintiffs' Motion in Support, at 24. So, FIRREA can be taken as modifying the legal standards against which the receiver/administrator's conduct is evaluated.

## IV. CONCLUSION

Upon consideration of the Defendant's Motion for Summary Judgment, the Plaintiffs' Motion for Partial Summary Judgment, the opposition thereto, the applicable law, and the record herein, the Court finds that the Defendant is entitled to summary judgment against the Plaintiffs for the reasons contained herein. The Court shall issue an Order of even date herewith consistent with the foregoing Opinion.

## JUDGMENT

Upon consideration of the Motion for Summary Judgment filed by the Defendant Federal Deposit Insurance Corporation, the Motion for Partial Summary Judgment filed by the Plaintiffs, the opposition thereto, the applicable law, and for the reasons articulated in this Court's Opinion of even date herewith, it is, by this Court, this 2 day of February, 1993,

ORDERED that Plaintiffs' Motion for Partial Summary Judgment pursuant to Fed.R.Civ.P. 56 shall be, and hereby is, DENIED; and it is

FURTHER ORDERED that Defendant's Motion for Summary Judgment pursuant to Fed.R.Civ.P. 56 shall be, and hereby is, GRANTED; and it is

FURTHER ORDERED that the above-captioned case shall be, and hereby is, DISMISSED from the docket of this Court, with costs awarded to the Defendant.