The CREDIT LIFE INSURANCE CO.

v.

FEDERAL DEPOSIT INSURANCE CORP., et al.

Civ. No. 92–283–JD.

United States District Court,
D. New Hampshire.

Oct. 18, 1993.

Paul C. Semple, McSwiney, Jones, Semple, Bowers & Wise, P.C., Concord, NH, for plaintiff Credit Life Ins. Co.

John T. Alexander, Ransmeier & Spellman, Concord, NH, for defendant Federal Deposit Ins. Corp., as Liquidating Agent and/or Receiver of Amoskeag Bank.

## ORDER

DiCLERICO, Chief Judge.

The plaintiff, The Credit Life Insurance Company ("CLIC"), seeks judicial review of a decision by the FDIC, in its capacity as receiver for the failed Amoskeag Bank ("FDIC–Receiver"), denying CLIC's proof of claim. The plaintiff brings this action against FDIC–Receiver and the FDIC in its corporate capacity ("FDIC–Corporate"). CLIC presents three theories of liability against FDIC–Corporate. Pursuant to Fed. R.Civ.P. 12(b)(6), FDIC–Corporate moves to dismiss the plaintiff's complaint for failure to state a claim upon which relief can be granted (document no. 7). In the alternative, FDIC–Corporate moves for summary judgment pursuant to Fed.R.Civ.P. 56 (document no. 13). FDIC–Receiver also moves for summary judgment (document no. 12). For the following reasons, the court grants the motions for summary judgment.

### Background

On October 1, 1987, Amoskeag Bank ("Amoskeag") issued a "clean, irrevocable and unconditional" standby letter of credit ("LOC") for the account of New England

States Re, Ltd. ("N.E. States") and the benefit of CLIC. The LOC secured N.E. States's obligation to make payment on certain reinsurance obligations. Amoskeag promised to promptly honor CLIC's sight drafts, with the condition that any funds obtained be used only for one or more of the following purposes:

> (1) to reimburse CLIC for N.E. States' share of premiums returned to the owners of policies or certificates of credit insurance reinsured to N.E. States' on account of cancellation;

> (2) to reimburse CLIC for N.E. States share of benefit or losses paid by CLIC under policies reinsured to N.E. States; and

> (3) to pay amounts due to CLIC from N.E. States under the terms of the Agreements of Reinsurance between those parties.

The LOC was backed by the personal guaranty of Charles F. Yanco and the guaranty of O & C Realty secured by a real estate mortgage. CLIC agreed to satisfy any demand for funds in the first instance from a trust account and to access the LOC only after all funds from the trust account were exhausted. Defendant's Motion for Summary Judgment as to FDIC–Receiver, attachment 2 (letter from CLIC to Amoskeag). Amoskeag did not pay an insurance premium on the LOC. Croteau Affidavit at 2.

On October 10, 1991, Amoskeag was declared insolvent and closed by the Bank Commissioner for the State of New Hampshire. The FDIC was appointed receiver of the bank. *See* 12 U.S.C.A. §§ 191 and 1821(c) (West 1989) (general grounds for appointment of FDIC as receiver of insolvent national bank). FDIC–Receiver entered into a purchase and assumption agreement with First New Hampshire Bank.

On or about October 30, 1991, the FDIC, Division of Liquidation, notified CLIC the LOC might be disaffirmed pursuant to 12 U.S.C.A. § 1821 (West 1989 & Supp.1993) (receiver has authority to disaffirm burdensome contracts). On or about December 20, 1991, CLIC received a second letter, which stated in part:

> Letters of credit are not provable claims against the Receiver, unless a triggering event occurred prior to the appointment of the Receiver.... To the extent that the letter of credit in question does constitute a provable claim, the letter of credit is hereby repudiated.

Defendant's Motion for Summary Judgment as to FDIC–Receiver, attachment 4. CLIC responded by filing an administrative proof of claim for payment under the LOC. FDIC–Receiver denied the proof of claim, stating the obligation was contingent at the time Amoskeag was declared insolvent and CLIC suffered no damage prior to the appointment of FDIC–Receiver. Complaint, ¶ 10.

## Discussion

### I. The Claims Against FDIC–Corporate

FDIC–Corporate initially moved to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6). In its objection to the motion to dismiss, CLIC raised new theories of liability. CLIC subsequently moved to amend its complaint. The motion was granted and two additional bases of liability were included. While the motion to amend was pending, FDIC–Corporate filed a motion for summary judgment on all claims alleged in the initial complaint and the request to amend.

In its amended complaint, CLIC first claims FDIC–Corporate succeeds to the bank's liability on the LOC as a successor to a portion of Amoskeag's assets. CLIC next claims FDIC–Corporate is responsible to pay the LOC because an LOC secured by personal guaranty and a guaranty backed by a mortgage is an insured deposit. CLIC finally claims FDIC–Corporate is liable because CLIC, as the beneficiary of a secured letter of credit, is entitled, pursuant to N.H.Rev. Stat.Ann. § 382–A:5–117 (1961), to assets that may be in FDIC–Corporate's possession.

Summary judgment is appropriate when material facts are undisputed and the moving party is entitled to judgment as a matter of law. *Rodriguez–Garcia v. Davila*, 904 F.2d 90, 94 (1st Cir.1990) (citing Fed.R.Civ.P. 56(c)). The burden is on the moving party to establish the lack of a genuine, material fac-

tual issue, *Finn v. Consolidated Rail Corp.*, 782 F.2d 13, 15 (1st Cir.1986), and the court must view the record in the light most favorable to the nonmovant, according the nonmovant all beneficial inferences discernable from the evidence. *Caputo v. Boston Edison Co.*, 924 F.2d 11, 13 (1st Cir.1991). Once the movant has made a properly supported motion for summary judgment, however, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986) (citing Fed.R.Civ.P. 56(e)).

*A. Liability Based on Succession to Assets*

CLIC offers no case law or any other authority in support of its assertion that FDIC–Corporate assumes the liability of the failed bank as a successor to the bank's assets. In fact, statutory authority and case law recognize that the FDIC may act simultaneously in two separate legal capacities. *See* 12 U.S.C.A. § 1821 *et seq.* (West 1989); *FDIC v. La Rambla Shopping Center, Inc.*, 791 F.2d 215, 218 (1st Cir.1986).

▮▮▮ The role of FDIC–Receiver is to marshal "the insolvent bank's assets and distribute[ ] them to the bank's creditors and shareholders." *Branch v. FDIC*, 825 F.Supp. 384, 391–92 (D. Mass.1993) (citing The National Bank Act, 12 U.S.C.A. §§ 192, 194, 1821(d)(2)(H)). When a bank is declared insolvent, one option available to FDIC–Receiver is to enter into a purchase and assumption agreement. *Id.* at 392. In a purchase and assumption transaction, the FDIC–Receiver sells the assets and liabilities of the failed bank to a bridge bank (or assuming bank), which continues operations without interruption. *Id.*

▮▮▮ The role of FDIC–Corporate is to insure the failed bank's assets. *Id.* at 391. FDIC–Corporate may receive funds of the insolvent bank as part of a reimbursement scheme. *Id.* at 392. FDIC–Corporate may also agree to purchase the bank's unacceptable assets in order to facilitate the purchase and assumption transaction. *Dababneh v. FDIC*, 971 F.2d 428, 432 (10th Cir.1992). Despite having acquired these assets, FDIC–Corporate is not a successor in interest to the failed bank, nor does it assume the liabilities of the receivership. *See, e.g., id.* (FDIC–Corporate cannot be held liable for FDIC–Receiver's actions); *In re F & T Contractors, Inc.*, 718 F.2d 171, 180 (6th Cir. 1983) (FDIC–Corporate does not assume any liability with respect to letters of credit by agreeing to purchase the unacceptable assets of failed bank); *FDIC v. Citizens Bank & Trust Co.*, 592 F.2d 364, 368 (7th Cir.) (FDIC–Corporate does not assume liability based on acquisition of failed banks assets), *cert. denied*, 444 U.S. 829, 100 S.Ct. 56, 62 L.Ed.2d 37 (1979).

▮▮▮ FDIC–Corporate and FDIC–Receiver are distinct entities. *See La Rambla*, 791 F.2d at 219. The liabilities of the failed bank are assumed by FDIC–Receiver until transferred to the bridge bank. *See Texas American Bancshares, Inc. v. Clarke*, 954 F.2d 329, 333 (5th Cir.1992). FDIC–Corporate may come into possession of the failed bank's assets, but cannot be held responsible for the failed bank's liabilities or the receivership's actions. *See In re F & T Contractors*, 718 F.2d at 180. Therefore, FDIC–Corporate is not responsible for Amoskeag's liability on the LOC, even if it received a portion of Amoskeag's assets, or for FDIC–Receiver's actions in disaffirming the LOC.[1]

*B. Liability based on the Letter of Credit as Insured Deposit*

▮▮▮ CLIC next argues FDIC–Corporate is a proper party to this action because the LOC was an insured deposit. According to CLIC, Yanco's personal guaranty and O & C Realty's guaranty backed by a mortgage make the LOC an insured deposit within the meaning of 12 U.S.C.A. § 1813(*l*)(1) (West 1989), which FDIC–Corporate is responsible to pay. FDIC–Corporate claims it is entitled to summary judgment pursuant to the Supreme Court's decision in *FDIC v. Philadel-*

---

1. Because the court finds FDIC–Corporate could not be liable even if it succeeded to a portion of Amoskeag's assets, it is immaterial whether FDIC–Corporate actually did succeed to any portion of the assets.

phia Gear Corp., 476 U.S. 426, 106 S.Ct. 1931, 90 L.Ed.2d 428 (1986). CLIC counters Philadelphia Gear is distinguishable.[2]

In Philadelphia Gear, the Court held that a standby letter of credit backed by a contingent promissory note is not an insured deposit.[3] Id. at 440, 106 S.Ct. at 1939. Philadelphia Gear Corporation was in possession of a letter of credit issued by the failed Penn Square Bank at the request of Orion Manufacturing Corporation. Id. at 427–28, 106 S.Ct. at 1932–33. At the time the bank issued the letter of credit, Orion executed an unsecured promissory note in the bank's favor. Id. at 428, 106 S.Ct. at 1933. Liability on the note was contingent on Philadelphia Gear presenting a draft following Orion's non-payment of the underlying obligation. See id. The bank was declared insolvent and FDIC–Receiver refused to honor the drafts Philadelphia Gear subsequently submitted. Id. at 428–29, 106 S.Ct. at 1933–34.

Philadelphia Gear argued the letter of credit was an insured deposit. Id. at 429, 106 S.Ct. at 1933–34. The Court observed that statutory deposit insurance came into being at a time when one-third of the nation's banks failed in a four year period. Id. at 432, 106 S.Ct. at 1935. "The focus of Congress was therefore upon ensuring that a deposit of 'hard earnings' entrusted by individuals to a bank would not lead to a tangible loss in the event of a bank failure." Id. at 432–33, 106 S.Ct. at 1935. The Court thus reasoned the relevant inquiry was whether "hard earnings" ever went into the bank. Id. at 435, 106 S.Ct. at 1936–37.

The Court determined a contingent promissory note evidencing an unconditional promise to pay involves no surrender of assets or hard earnings.[4] See id. In reaching this conclusion, the Court considered Orion's failure to surrender assets to the bank, the bank's failure to credit any Orion account in exchange for the promissory note, and the bank's failure to treat its own assets as increased by its acceptance of the note. Id.

The Court noted the bank could not collect on the promissory note until Philadelphia Gear presented unpaid invoices and a letter of credit. Id. Until the beneficiary took action, the note was a wholly contingent promise. Id. When the bank went into receivership, neither Orion nor Philadelphia Gear had lost anything except the ability to use the bank as a risk reducer. Id.

Given the Supreme Court's reasoning in Philadelphia Gear, the court rules that a standby letter of credit backed by a conventional reimbursement agreement is not an insured deposit. See id. at 440, 106 S.Ct. at 1939 ("Nothing was ventured, and therefore no insurable deposit was lost."). Conversely, a letter of credit backed with cash deposit or its equivalent, such as uncontingent promissory note, might create an insured deposit. See id. The Supreme Court used the term uncontingent to refer to fund-

---

2. CLIC also asserts that whether the LOC is an insured deposit is a genuine material issue of fact making summary judgment inappropriate. The status of the LOC, however, is not a question of fact but a question of law. The plaintiff concedes as much by implicitly agreeing with FDIC–Corporate that the applicability of Philadelphia Gear is determinative of the issue. Memorandum of Law in Support of Plaintiff's Objection to Motion for Summary Judgment of FDIC–Corporate at 2.

3. A commercial letter of credit is an instrument issued by a bank for the benefit of its customer, who is a buyer in a buyer-seller transaction. The bank agrees to pay any drafts drawn on it by the seller. The standby letter of credit, however, is a security device. The bank agrees to pay drafts drawn on it in the event the buyer fails to perform. See First Empire Bank–New York v. FDIC, 572 F.2d 1361, 1367 (9th Cir.), cert. denied, 439 U.S. 919, 99 S.Ct. 293, 58 L.Ed.2d 265 (1978).

4. In reaching its decision, the Court paid particular deference to legislative intent and FDIC construction of the term deposit. Philadelphia Gear, 476 U.S. at 438, 106 S.Ct. at 1938. "When the statute giving rise to the longstanding interpretation has been reenacted without pertinent change, the 'congressional failure to revise or repeal the agency's interpretation is persuasive evidence that the interpretation is the one intended by Congress.' " Id. at 437, 106 S.Ct. at 1937 (citation omitted).

In a 1990 Advisory Opinion, the FDIC stated that "a stand-by letter of credit is most likely to be treated by the FDIC as a deposit for purposes of federal insurance when the depositor has made himself primarily liable for the letter, either by depositing funds with the institution or by providing a noncontingent, presently effective note." FDIC Advisory Opinions, FDIC–90–23 Advisory Op. 4453 (Aug. 31, 1990).

ed promissory notes, such as those notes securing commercial letters of credit. *Id.*

▮ In this case, the standby letter of credit was backed by a personal guaranty and a guaranty backed by a mortgage on two properties. These guarantees are not equivalent to an uncontingent promissory note because the secured guaranty was not treated as a cash equivalent. No assets were actually surrendered to the bank. Neither N.E. States, Yanco nor O & R Realty deposited funds with Amoskeag. Amoskeag never paid an insurance premium on the letter of credit.[5] Croteau Affidavit at 2. Moreover, Amoskeag could neither demand payment from the guarantors nor foreclose on the mortgage until N.E. States was indebted to CLIC and CLIC exhausted the trust money and presented sight drafts for payment.

CLIC did not present sight drafts for payment prior to the FDIC–Receiver's appointment. Therefore, at the time Amoskeag failed, the personal guarantees did not represent hard assets, and CLIC, like Philadelphia Gear, lost nothing more than the ability to use Amoskeag as a risk reducer. The LOC is not an insured deposit and FDIC–Corporate cannot be found liable on the basis of its role as insurer.

### C. *Liability based on N.H.Rev.Stat.Ann. § 382–A:5–117*

▮ Finally, CLIC asserts FDIC–Corporate is liable under N.H.Rev.Stat.Ann. § 382–A:5–117, New Hampshire's codification of U.C.C. § 5–117. Section 382–A:5–117 states:

> [T]o the extent of any funds or collateral turned over after or before the insolvency as indemnity against or specifically for the purpose of payment of drafts or demands for payment drawn under the designated credit, the drafts or demands are entitled to payment in preference over depositors or other general creditors of the issuer or bank. . . .

N.H.Rev.Stat.Ann. § 382–A:5–117(1)(a) (1961). Section 382–A:5–117 regulates the rights of the parties to the letter of credit. Ronald A. Anderson, Anderson on the Uniform Commercial Code § 5–117:2, at 360 (3rd ed.1985). The section treats collateral securing a letter of credit as distinct from other collateral because these funds were not part of the bank's general assets or funds on ordinary deposit. N.H.Rev.Stat.Ann. § 382–A:5–117, uniform laws comments. Because the funds were held for a special purpose, general creditors of the bank have no right to the funds. Anderson, *supra*, § 5–117:5, at 361; N.H.Rev.Stat.Ann. § 382–A:5–117(1)(a). Thus, the section ensures collateral securing a letter of credit is not used to satisfy general creditors. *Id.*

CLIC claims it was denied preferential payment of the LOC collateral. CLIC points to a clause in the purchase and assumption agreement providing the bridge bank must refund to FDIC–Corporate the value of deposits unclaimed at the expiration of eighteen months.[6] CLIC argues FDIC–Corporate will succeed to a portion of Amoskeag's assets under the clause. According to CLIC, the collateral securing the LOC could be among the returned assets.

▮ CLIC does not assert FDIC–Corporate is a general creditor of Amoskeag. Plaintiff's Objection to Motion for Summary Judgment of FDIC–Corporate at 3 (describing FDIC–Corporate as a "repository of 'deposits'"). Nor has the plaintiff provided the

---

5. FDIC–Corporate further asserts that Amoskeag did not enter the LOC as a deposit liability. Memorandum of Law in Support of FDIC's Motion for Summary Judgment as to FDIC in its Corporate Capacity, at 8–9. CLIC does not dispute the assertion.

6. The Agreement provides:
 2.3 *Unclaimed Deposits:* If, within eighteen (18) months after Bank Closing, any depositor of the Failed Bank does not claim or arrange to continue such depositor's Deposit assumed pursuant to Section 2.1 at the Assuming Bank, the Assuming Bank shall, within fifteen (15) Business Days after the end of such eighteen (18)-month period, (i) refund to the Corporation the amount of each such Deposit . . ., (ii) provide to the Corporation a schedule of all such refunded Deposits in such form as may be prescribed by the Corporation, and (iii) assign, transfer, convey and deliver to the Receiver all right, title and interest of the Assuming Bank in and to Records previously transferred to the Assuming Bank and other records generated or maintained by the Assuming Bank pertaining to such Deposits.

court with any authority suggesting that FDIC–Corporate is liable under N.H.Rev. Stat.Ann. § 382–A:5–117 solely as the ultimate beneficiary of FDIC–Receiver's alleged misdeeds. Moreover, FDIC–Corporate is not responsible for payments to creditors.[7] If a preferential transfer in favor of FDIC–Corporate occurred, FDIC–Receiver, as distributor of the Amoskeag's assets, is responsible. FDIC–Corporate cannot be held accountable for the conduct of FDIC–Receiver. *See FDIC v. Butcher,* 660 F.Supp. 1274, 1280 (E.D.Tenn.1987). Thus, the court rules that FDIC–Corporate is not liable under N.H.Rev.Stat.Ann. § 382–A:5–117 merely because it might come into possession of a portion of the transferred Amoskeag assets.

## II. The Claim Against FDIC–Receiver

In its complaint, CLIC contends FDIC–Receiver was "without authority to disaffirm the LOC and that its actions in canceling the LOC and denying the administrative claim filed by plaintiff were illegal." Complaint, ¶ 11. CLIC asserts standby letters of credit are provable claims that FDIC–Receiver is not authorized to disaffirm or repudiate. FDIC–Receiver counters that standby letters of credit are not provable claims, and furthermore, should the court find standby letters of credit provable claims, FDIC–Receiver is authorized to disaffirm the obligation pursuant to the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA"), 103 Stat. 183, codified in relevant part at 12 U.S.C.A. § 1811 *et seq.* (West 1989 & Supp.1993).

The FDIC, acting as receiver, "shall determine whether to allow or disallow [any] claim" against an insolvent depository institution. 12 U.S.C.A. § 1821(d)(5)(A)(i). The National Bank Act requires the FDIC–Receiver to distribute assets ratably "on all such claims as may be proved to [its] satisfaction or adjudicated in a court of competent jurisdiction...." 12 U.S.C.A. § 194 (West 1989).[8] The Act does not, however, "set forth specifically the requirements of a 'provable claim.'" *Citizens State Bank v. FDIC,* 946 F.2d 408, 412 (5th Cir.1991).

Under general receivership law, a claim against an insolvent bank is measured at the time insolvency is declared.[9] *Lawson v. Fleet Bank,* 807 F.Supp. 136, 143 (D.Me. 1992), *aff'd sub nom. Lawson v. FDIC,* 3 F.3d 11 (1st Cir.1993). In *Kennedy v. Boston–Continental Nat'l Bank,* the First Circuit held that the holder of a provable claim is entitled to the amount due and owing at the time of the declaration of insolvency. 84 F.2d 592, 597 (1st Cir.1936); *cert. dismissed,* 300 U.S. 684, 57 S.Ct. 667, 81 L.Ed. 887 (1937). The court stated, "[i]f nothing is due at the time of the insolvency, the claim should not be allowed, for that would be in violation of the National Banking Act calling for a ratable distribution." *Id.* (citation omitted). The court noted the numerous authorities requiring a claim "to have accrued and become unconditionally fixed" before the bank was declared insolvent. *See id.* To the extent it has not been superseded by statute, *Kennedy* is still good law in this circuit and continues to be followed by several other courts. *See Dababneh,* 971 F.2d at 434; *Of-*

---

7. See *supra* the discussion of the dual roles of the FDIC.

8. The statute provides:

From time to time, after full provision has been first made for refunding to the United States any deficiency in redeeming the notes of such association, the comptroller shall make a ratable dividend of the money so paid over to him by such receiver on all such claims as may have been proved to his satisfaction or adjudicated in a court of competent jurisdiction, and as the proceeds of the assets of such association are paid over to him, shall make further dividends on all claims previously proved or adjudicated; and the remainder of the proceeds, if any, shall be paid over to the shareholders of such association,

or their legal representatives, in proportion to the stock by them respectively held.
*Id.*

9. The distribution of Amoskeag's assets is governed by federal law. *See Citizens State Bank,* 946 F.2d at 411 (distribution of assets of insolvent national bank is governed by federal law). *See also* N.H.Rev.Stat.Ann. § 395:10–a (Supp. 1992) (A "court may authorize the commissioner to appoint as ... receiving agent of the bank commissioner a federal agency ... allowing [the agency] ... to take possession of the assets ... of a closed New Hampshire depository institution ... upon such appointment, the Federal Deposit Insurance Corporation ... shall carry out its duties as receiver ... pursuant to the applicable provisions of federal law").

*fice and Professional Employees Int'l Union Local 2 v. FDIC*, 813 F.Supp. 39, 45 (D.D.C. 1993); *Lawson*, 807 F.Supp. at 143. *But see, First Empire Bank v. FDIC*, 572 F.2d 1361, 1368 (9th Cir.), *cert. denied*, 439 U.S. 919, 99 S.Ct. 293, 58 L.Ed.2d 265 (1978) (*Kennedy* decision dependent on outdated bankruptcy rules).

In *First Empire*, the Ninth Circuit abandoned the general rule that a claim must be fixed and certain to be provable and adopted a new provability rule for standby letters of credit. 572 F.2d at 1369. The *First Empire* court determined that beneficiaries of standby letters of credit might possess provable claims in the receivership even where no draft was presented prior to insolvency.[10] *Id.* at 1369. The *First Empire* court held, on equitable grounds, that a standby letter of credit is provable if

> (1) it exists before the banks's insolvency and does not depend on any new contractual obligations arising later; (2) liability on the claim is absolute and certain in amount when the suit is filed against the receiver; and (3) the claim is made in a timely manner, well before any distribution of the assets of the receivership other than a distribution through a purchase and assumption agreement.

*Interfirst Bank Abilene, N.A. v. FDIC*, 777 F.2d 1092, 1094 (5th Cir.1985) (citing *First Empire*, 572 F.2d at 1367–69). The court concluded that because the letters of credit in question met all conditions, the creditors were entitled to ratable distribution under § 194 of the National Bank Act. 572 F.2d at 1369. A number of circuits have followed *First Empire. See Citizens State Bank*, 946 F.2d at 416; *FDIC v. Liberty Nat'l Bank & Trust Co.*, 806 F.2d 961, 966 (10th Cir.1986).

CLIC urges this court to adopt the rule of *First Empire.* FDIC–Receiver appears to concede that CLIC would have a provable claim under the *First Empire* doctrine.

Memorandum of Law in Support of Motion for Summary Judgment as to FDIC–Receiver at 3–5. FDIC–Receiver argues, however, that *First Empire* "is not binding precedent on this Court and should not be adopted by it." *Id.* at 4. FDIC–Receiver further argues that even if this court should decline to follow *Kennedy* strictly, adopt the *First Empire* doctrine and rule standby letters of credit are provable, it is still entitled to summary judgment.

 According to FDIC–Receiver, it is authorized by FIRREA to disaffirm the letter of credit. Section 1821(e) of FIRREA authorizes the FDIC–Receiver to disaffirm or repudiate any burdensome contract:

> In addition to any other rights a conservator or receiver may have, the conservator or receiver for any insured depository institution may disaffirm or repudiate any contract or lease—
>
> (A) to which such institution is a party;
>
> (B) the performance of which the conservator or the receiver, in the conservator's or receiver's discretion, determines to be burdensome; and
>
> (C) the disaffirmance or repudiation of which the conservator or the receiver determines, in the conservator's or receiver's discretion, will promote the orderly administration of the institution's affairs.

12 U.S.C.A. § 1821(e)(1). Once a contract is disaffirmed or repudiated, the disaffirmance is treated as a breach of contract. *Howell v. FDIC*, 986 F.2d 569, 571 (1st Cir.1993). Any claim for damages is "(i) limited to actual direct compensatory damages; and (ii) determined as of the date of the appointment of the conservator or receiver...." 12 U.S.C.A. at § 1821(e)(3); *see also Lawson v. FDIC*, 3 F.3d 11, 15 (1st Cir.1993). Thus, if FDIC–Receiver had authority to disaffirm the letter of credit, no damages would be due as long as the triggering event—the exhaus-

---

**10.** FDIC–Receiver had entered into a purchase and assumption agreement with a bridge bank. *Id.* at 1365. Among the failed bank's assets and liabilities were a number of standby letters of credit. *Id.* The bridge bank refused to accept the letters of credit unless FDIC–Corporate guaranteed the value of the obligation, claiming they represented an unacceptable banking risk. *Id.*

FDIC–Corporate refused, noting that to do so "would be using the deposit insurance fund to make good 'tainted' transactions...." *Id.* FDIC–Receiver refused the claims of the holders of the LOC's, asserting they were contingent at the date of insolvency and therefore unprovable. *See id.* at 1367.

tion of the trust account and presentation of a sight draft—had not occurred prior to the date the bank was declared insolvent.

■ Whether a standby letter of credit is a contract that can be repudiated is a question causing confusion and disagreement among commentators. *Compare,* Edgardo E. Colon, *Letters of Credit in Times of Business and Bank Failures,* 107 Banking L.J. 6 (1990) (under FIRREA letters of credit are not contracts and FDIC has no authority to disaffirm letters of credit) *with* Beverly J. Quail, *RTC's Right to Repudiate Letters of Credit,* 21 Colo.Law. 2415 (1992) (under FIRREA standby letters of credit are contracts that may be repudiated); Ronald R. Glancz & Brent Gunsalus, *Rights of Debtors and Creditors of Failed Financial Institutions, in* Banks and Thrifts: Introduction to FDIC/RTC Receivership Law 223, 236 (PLI Order No. A4–4373, Series No. 616, 1992) (under FIRREA letters of credit may be disaffirmed; date of receiver's appointment is date for determining damages). Letters of credit are independent of the underlying contractual obligation between the buyer and seller. *Mutual Export Corp. v. Westpac Banking Corp.* 983 F.2d 420, 423 (2d Cir. 1993); *Ward Petroleum Corp. v. FDIC,* 903 F.2d 1297, 1299 (10th Cir.1990). Courts, however, have treated the relationship between an issuing bank and the beneficiary of a letter of credit as a contractual one. *See, e.g., FDIC v. Plato,* 981 F.2d 852, 854 n. 3 (5th Cir.1993) (a letter of credit involves a "contract between the bank and seller, whereby the bank will pay a certain amount of money to the seller in the event that the buyer fails to pay the seller in breach of the underlying contract between the buyer and seller"); *Schmueser v. Burkburnett Bank,* 937 F.2d 1025, 1032 (5th Cir.1991) (letter of credit is a contract under Title 1 of the U.C.C.); *All Service Exportacao, Importacao Comercio, S.A. v. Banco Bamerindus Do Brazil, S.A.,* 921 F.2d 32, 34 (2d Cir.1990) (letter of credit is a contract evidencing the bank's commitment to pay the beneficiary upon compliance with specified terms and conditions). The U.C.C.'s treatment of the relationship between a bank and a beneficiary mirrors the courts' approach. U.C.C. § 5–114(1), official comment (a "letter of credit is essentially a contract between the issuer and the beneficiary ... independent of the underlying contract between the customer and the beneficiary").

■ The court rules that a letter of credit is a contract for purposes of § 1821(e). The court recognizes the congressional intent that FIRREA not modify current law. 135 Cong.Rec. H7358–05 (daily ed. Oct. 23, 1989) (statement of Rep. Gonzalez) (section 1823(e)(3) "merely clarifies existing law, ... to the extent there was any ambiguity in the prior law, [the section] clarified the law; it did not change it"); *see also* House Rep. No. 101–222, reprinted in 1989 U.S.C.C.A.N. 86, 432, 436. The right of the FDIC to disaffirm contracts is unambiguous. Any ambiguity arising from *First Empire* and *Kennedy* concerns whether letters of credit are provable when the triggering events do not occur until after the issuing bank is declared insolvent.

■ It is not necessary for the court to resolve whether *First Empire* modifies *Kennedy* and applies in this case, however. To the extent that CLIC had a provable claim, the FDIC acted with authority when it disaffirmed the letter of credit. Damages are limited to the amount owing at the time of insolvency. 12 U.S.C.A. § 1821(e)(3). Because no sum was owing at the time Amoskeag was declared insolvent, CLIC is not entitled to damages. Thus, summary judgment is appropriate.

### Conclusion

For the foregoing reasons, FDIC–Corporate's motion for summary judgment (document no. 13) is granted and FDIC–Receiver's motion for summary judgment (document no. 12) is granted. As a result of the court's decision, FDIC–Corporate's motion to dismiss (document no. 7) is moot.

SO ORDERED.