## Christian A. Fisher Building and Loan Association's Appeal.

6

Argued May 10, 1940. Before Schaffer, C. J., Maxey, Drew, Linn, Stern, Barnes and Patterson, JJ.

*George J. Mallen,* Special Deputy Attorney General, with him *Russell C. Wismer,* for appellant.

*John W. Lord, Jr.,* Special Deputy Attorney General, with him *James W. McLea,* for appellee.

*Orville Brown,* Deputy Attorney General and *Claude T. Reno,* Attorney General, for Commonwealth, Amicus Curiæ.

Opinion by Mr. Justice Stern, June 24, 1940:

Some of the facts in regard to the relations between the Northwestern Trust Company and the Christian A.

Fisher Building and Loan Association have been set forth in the preceding opinion (in re appeals Nos. 352, 353, 354, 355, Jan. T., 1939). It must here be added that, at the time when the Secretary of Banking took possession of the Trust Company, on July 17, 1931, it was the owner of stock in that Association, the paid-in value of which, on April 1, 1933, when the Secretary of Banking took possession of the Association, amounted to $52,194.40; of this amount $24,875 represented installment stock, $20,000 full-paid stock, $2,539.40 stock which had been assigned to the Trust Company and was left after the appropriation of so much thereof as was necessary to pay stock loans of the assignors, and $4,780 stock which had been declared matured. At the time of the closing of the Trust Company, however, none of the stock had matured, nor had any notice of withdrawal been given.

At the audit of the first and partial account of the receiver of the Association the court refused to allow him to set off the deposit balance which the Association had with the Trust Company against the claim of the latter for the value of its shares in the Association or against the liquidating dividends paid by the Association on such shares. From the decree of the court to that effect the receiver of the Building and Loan Association appeals.

The rights of parties to a set-off are determined as of the time of the closing of the insolvent institution and the appointment of a receiver: *Gordon, Secretary of Banking, v. Anthracite Trust Co.*, 315 Pa. 1, 3; *United Security Trust Company Case*, 321 Pa. 276, 284.* Cross-demands then existing, if such as would sustain mutual actions against each other, are the proper subjects of set-offs. An obligation due the insolvent, even

* Although, in the present case, the Association likewise became insolvent after the Trust Company closed, it is agreed by the parties that the rights of the receiver of the Association to a set-off became fixed at the time of the Trust Company's insolvency.

though maturing after the insolvency, may be set off against a debt due by the insolvent at the time of the declaration of insolvency: *Franklin Trust Company of Philadelphia Case,* 319 Pa. 89, 92; *Anthracite Trust Company; Mears's Appeal,* 319 Pa. 113, 116, 117. In order that set-offs may be permitted it is not necessary that the obligations should be liquidated in amount at the time the insolvency is declared, provided they then exist and are capable of liquidation by a known legal standard: *Fisher, Commissioner of Banking, v. Davis,* 278 Pa. 129, 133; *Fifth Mutual Building Society of Manayunk's Appeal,* 317 Pa. 161, 176-178. But where an obligation at that time is neither due, nor liquidated, nor capable of liquidation by any known legal standard, nor enforceable in an action at law, it cannot be set off against an opposing claim. In *Russell v. Miller,* 54 Pa. 154, 164, it was said: "A debt or the damages which can be set off as an independent counter claim must be such as a jury can find and liquidate in the ordinary way just as if the defendant were a plaintiff suing in debt, assumpsit or covenant." Accordingly, in *Commonwealth Trust Company of Pittsburgh's Appeal,* 324 Pa. 161, it was held that one could not set off against his mortgage indebtedness to the trustee of funds invested in a mortgage pool the value of his own share in that pool as the beneficiary of an estate which held a participating interest therein. The court pointed out that such beneficiary was not a creditor of the trustee of the funds, and had no claim which could then be enforced by suit, the only duty of the trustee in respect to such beneficial interest being, when that interest was finally liquidated by administration of the trust funds represented by the mortgage pool, to pay over the proceeds thereof to the beneficiary. In *Harr, Secretary of Banking, v. Bankers Securities Corporation,* 129 Pa. Superior Ct. 547, in a carefully reasoned opinion by Judge PARKER, it was held that a corporation which was a depositor in a closed bank did not have the right to set

off its deposit therein against dividends which it declared several years afterwards on its cumulative preferred stock, some of which was owned by the bank at the time of closing. It was there argued that when the bank went into receivership it had a contingent right to receive dividends on the stock, which right subsequently ripened into a matured obligation. The court cited numerous decisions to the effect that a depositor in an insolvent bank might set off his deposit against his note held by the bank at the time of the insolvency but not then due, and against installments of rent falling due after the insolvency under a lease from the bank for real estate where the lease was in existence when the insolvency was declared, and also that an endorser of a note, when sued by the receiver of an insolvent bank, might set off his deposit in the bank at the time of the suspension, provided that the maker of the note was insolvent and the endorser was not otherwise indemnified against loss. But the Court distinguished such cases on the ground that in all of them the depositors had unconditionally bound themselves to pay definite sums of money and there was no contingent element in their undertakings other than there would be in any contract to be performed in the future, whereas in the case then before the court the bank had no right to receive dividends on the preferred stock owned by it in the corporation unless and until such dividends were earned and declared by the board of directors in their discretion. The court said (pp. 556, 557): "When insolvency was declared there was no obligation to pay a dividend then or at a future date. There was not an *existing* obligation to the bank due then or maturing in the future. . . . When the bank became insolvent and went into liquidation the Securities Corporation was a depositor with no right of set-off; it was only entitled to participate pro rata with other depositors, creditors of like grade. It could not better its situation to the disadvantage of other creditors by the fact that in later

years it earned and declared a dividend. At the time the right to receive dividends accrued, the relative rights of the creditors had been fixed."

It is argued by the receiver of the Building and Loan Association that stock of such an association has a status different from that of an ordinary corporation in that its owner may, under certain circumstances, withdraw from the enterprise, and therefore the stock here involved had a potential withdrawal value which existed when the Trust Company passed into receivership. It is true that if the conditions exist which entitle a stockholder in a building and loan association to withdraw he may do so after a specified time following notice to that effect and thereby acquire the status of a quasi creditor of the association. But this right is strictly limited; it depends upon the amount of funds then in the treasury and upon the solvency of the association, and if the withdrawal of the stockholder would result in giving him a greater share of the assets of the association than could then be obtained by all the other shareholders the withdrawal would not be permitted. Since the assets of such an association consist principally of mortgages and real estate, the valuation of which depends upon appraisals, it is evident not only that it is extremely difficult, in the absence of actual liquidation, to determine at any given time the real withdrawal value of the stock, but that such determination, if made, would necessarily be subject to modification if more accurate information in regard to the assets were later obtained, and especially if insolvency of the association subsequently occurred.

When the Northwestern Trust Company went into receivership on July 17, 1931, none of the stock which it owned in the Building and Loan Association had matured, nor had it given any notice of withdrawal. While there was an ultimate obligation of the Association to pay the Trust Company, as a shareholder, the proportion of the Association's assets to which it might at

some time be found to be entitled, no relation of debtor and creditor then existed. If the Trust Company's stock in the Association had been declared matured, or had notice of withdrawal been previously given and the circumstances were such that a withdrawal would have been legally enforceable, the fact that the amount payable on the stock might have been ascertainable only by a process of liquidation might not in itself have been fatal to its availability as a set-off, but, under the facts as they existed, there was then no actionable claim of the Trust Company against the Association and therefore no right of set-off. Nor, since such right must exist at the time of the declaration of insolvency or not at all, can a set-off be allowed of the Association's deposit with the Trust Company against the liquidating dividends subsequently paid by the Association, because these dividends were determined by what was left of the assets of the Association in its insolvency proceedings after the payment of its general creditors; they resulted from conditions arising long after the declaration of the Trust Company's insolvency, and did not represent the maturing of a debt which existed at the time of the Trust Company's insolvency, for, as already pointed out, no such debt then existed.

The decree of the court below is affirmed, the costs to be divided equally between the receiverships of the Trust Company and the Christian A. Fisher Building and Loan Association.