Douglas CROCKER, II, Plaintiff,

v.

RESOLUTION TRUST CORPORATION
as receiver for Republic Savings
Bank, F.S.B., Defendant.

No. 92 C 8391.

United States District Court,
N.D. Illinois, E.D.

Dec. 14, 1993.

Thomas H. Stern, Dawn Marie Maxwell, Thomas H. Stern, P.C., Chicago, IL, for plaintiff.

Steven A. Weiss, Paula Enid Litt, Bradley Paul Nelson, Schopf & Weiss, Chicago, IL, for defendant.

## OPINION AND ORDER

NORGLE, District Judge:

Before the court is the motion of defendant Resolution Trust Corporation ("RTC") as Receiver for Republic Savings Bank F.S.B. ("Republic") for summary judgment against plaintiff Douglas Crocker II ("Crocker"). For the following reasons, the motion is granted.

## BACKGROUND

On January 1, 1989, Crocker entered into an employment agreement ("Agreement") with Republic.[1] Republic was a federally chartered savings association. Upon executing the Agreement, Crocker assumed the duties as the Chairman of the Board of Republic. Crocker served as the Chairman from January 1, 1989 until June 5, 1992 when

---

1. The following facts are drawn from the parties' Local Rule 12(M) and (N) statements submitted to the court.

his employment contract terminated by operation of 12 C.F.R. § 563.39(b)(5). On June 5, 1992, the Office of Thrift Supervision ("OTS") declared that Republic was in an unsafe and unsound condition, and placed Republic in receivership. OTS designated RTC as the receiver for Republic.

Subsequent to Crocker's termination from his employment with Republic by operation of law, he filed a proof of claim with RTC pursuant to 12 U.S.C. § 1821(d)(3)(A) demanding a sum of money allegedly owed to Crocker under the Agreement. Crocker maintained that he is entitled to $250,000 as a consulting fee under paragraphs 4(c)[2] and 8(a)(ii)(B)[3] of the Agreement. Additionally, Crocker claimed that he is entitled to $116,320 as bonus for the year 1990 and an undetermined sum for the year 1992 under paragraphs 4(b)[4] and 8(a)(ii)(B) of the Agreement. Crocker made no claim for the bonus for the year 1991 and neither party provides an explanation for the non-claim. Crocker further claimed that he is entitled to the various benefits detailed under paragraphs 6[5] and 7(b)[6] of the Agreement.[7]

RTC reviewed the proof of claim submitted by Crocker and determined that he was not entitled to any of the claims because Republic's obligations under the Agreement terminated on the date of the insolvency. As a result, Crocker filed a complaint seeking relief identical to the demands he made in his proof of claim. Crocker brings this instant action pursuant to 12 U.S.C. § 1821(d)(6)(A).

## DISCUSSION

[1–4] Rule 56(c) of the Federal Rules of Civil Procedure provides that for a party to prevail on a summary judgment motion "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, [must] show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Even though all reasonable inferences are drawn in favor of the party opposing the motion, *Beraha v. Baxter Health Care Corp.,* 956 F.2d 1436, 1440 (7th Cir.1992), a scintilla of evidence in support of the nonmovant's position will not suffice to oppose a motion for summary judgment. *Brownell v. Figel,* 950 F.2d 1285, 1289 (7th Cir.1991). Instead, the nonmoving party must elucidate specific facts demonstrating that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). Moreover, to preclude summary judgment the disputed facts must be those that might affect the outcome of the suit, *First Indiana Bank v. Baker,* 957 F.2d 506, 508 (7th Cir. 1992), and a dispute about a material fact is

2. "[Republic] shall compensate Crocker for all services to be rendered by him during the Consulting Period at an annual compensation rate of Two Hundred Fifty Thousand Dollars ($250,000). Such consulting fees shall be payable by [Republic] semi-monthly...." Agreement ¶ 4(c).

3. "In the event of Crocker's termination without cause by [Republic] during the Employment Period, Crocker shall receive all compensation or benefits hereunder through the date of termination including the proration of any bonus payable ... and the Consulting Period shall commence ... for a period of one (1) year...." Agreement ¶ 8(a)(ii)(B).

4. "[Republic] shall also pay Crocker a bonus each year equal to four percent (4%) of the pretax earnings of [Republic]...." Agreement ¶ 4(b).

5. In addition to the compensation payable to Crocker pursuant to Paragraph 4 above, during the Term of this Agreement [Republic] shall provide to Crocker at the sole expense of [Republic], any and all medical and other benefits made generally available to [Republic's] officers:.... In addition, [Republic] shall purchase and maintain, during the Term of this Agreement, a term life insurance policy on the life of Crocker with a death benefit of One Million Dollars ... at the expense of [Republic].... Agreement ¶ 6.

6. During the Terms of this Agreement, [Republic] shall provide Crocker with the use of an office with telephone, and secretarial services. During the Employment Period, [Republic] shall also provide Crocker with the use of an automobile and the insurance and maintenance expenses with respect to such automobile shall be paid by [Republic].... Agreement ¶ 7(b).

7. Crocker admits in his Rule 12(N) statement that his employment terminated as of June 5, 1992. Therefore, the court grants RTC's motion for summary judgment as to Crocker's request for relief based on paragraphs 6 and 7(b) of the Agreement without further discussion.

"genuine" only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

■ "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims and defenses...." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Accordingly, the non-moving party is required to go beyond the pleadings, affidavits, depositions, answers to interrogatories and admissions on file to designate specific facts showing a genuine issue for trial. *Bank Leumi Le–Israel, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir.1991).

In the instant action, the material facts are not in dispute. The contested issue is whether Crocker possessed a vested interest in certain monetary compensation and benefits under the Agreement prior the termination of his employment with Republic by operation of 12 C.F.R. § 563.39.

■ Before analyzing that issue, the court must first resolve the issue of whether Illinois or federal law govern the instant action. Crocker asserts that the issue of whether certain benefits were vested prior to the termination of the Agreement must be governed by Illinois law. The basis for the contention is found under paragraph 15 of the Agreement which provides that "[t]his Agreement and the rights and obligations of the parties hereunder shall be governed by and construed in accordance with the laws of the State of Illinois." Agreement ¶ 15. Crocker cites no authority to support his argument that a mere choice-of-law provision within a contract controls the applicable law when maintaining an action under 12 U.S.C. § 1821(d)(6)(A).

The court rejects Crocker's position. Federal law will govern the instant action. *See Rush v. Federal Deposit Ins. Corp.*, 747 F.Supp. 575, 578 (N.D.Cal.1990). Crocker filed his action under the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA") 12 U.S.C. § 1821(d)(6)(A), invoking federal question jurisdiction. In addition, the issue of wheth-er certain benefits were vested prior to the termination of the Agreement require the construction and application of 12 C.F.R. § 563.39(b)(5). The relevant language of 12 C.F.R. § 563.39(b)(5) provides that "[a]ll obligations under the [Agreement] shall be terminated ... when the association is determined by the Director [of OTS] to be in an unsafe and unsound condition[; however,] [a]ny rights of the parties that have already vested ... shall not be affected by such [termination]." 12 C.F.R. §§ 563.39(b)(5) and (b)(5)(ii). Therefore, the resolution of the issue present in the case at bar is subject to the federal provision containing an exception pertaining to the termination of obligations under employment contracts.

Further, applying Illinois law will impede the Congressional intent to regulate the savings and loan industry after its demise. FIRREA was enacted by the United States Congress to assist in stabilizing "the savings and loan industry which suffered huge losses in the years proceeding 1989 and [in] provid[ing] a mechanism for the federal government to recoup losses of federally insured deposits." *Resolution Trust Corp. v. Gallagher*, 10 F.3d 416, 418, n. 2 (7th Cir.1993) (citing H.R.Conf.Rep. No. 222, 101st Cong., 1st Sess. 411 (1989), *reprinted in* 1989 U.S.C.C.A.N. pp. 86, 432, 450).

■ Moreover, the choice-of-law provision within the Agreement is not relevant in this context. Choice-of-law provisions included in contracts control the substantive law in the event state law governs the case. *See Federal Savings & Loan Insurance Corp. v. Griffin*, 935 F.2d 691, 698 (5th Cir.1991); *Federal Deposit Ins. Corp. v. Petersen*, 770 F.2d 141, 142 (10th Cir.1985). However, in the instant case, federal law governs the issues. Thus, the choice-of-law provision within the Agreement does not dictate the applicable law in the instant action.

The propriety of RTC's exercise of its authority under 12 C.F.R. § 563.39 to deny Crocker's claims for compensation and benefits hinges upon whether the disputed claims had "vested" prior to RTC's termination of

the Agreement.[8] The regulation itself does not define the term "vested." *Federal Savings & Loan Insurance Corp. v. Quinn,* 711 F.Supp. 366, 378 (N.D.Ohio 1989), *vacated and remanded on other grounds,* 922 F.2d 1251 (6th Cir.1991). Black's Law Dictionary defines "vested" as follows:

Having the character or given the rights of absolute ownership; not contingent; not subject to be defeated by a condition precedent. To be "vested," a right must be more than a mere expectation based on an anticipation of the continuance of an existing law; it must have become a title, legal or equitable, to the present or future enforcement of a demand, or a legal exemption from the demand of another.

Black's Law Dictionary 1401 (5th ed. 1979).

The Seventh Circuit has not yet defined the term "vested" within the context of 12 C.F.R. § 563.39 and only a few federal courts have defined the term. The court in *Rush v. Federal Deposit Ins. Corp.,* 747 F.Supp. 575 (N.D.Cal.1990), adopted the definition employed by *Quinn.* In *Quinn,* the district court borrowed the definition of "vested" as used under ERISA to determine whether claims were "vested" within the meaning of 12 C.F.R. § 563.39. *Rush,* 747 F.Supp. at 578. Under ERISA, the term "vested" has been defined to mean "an unconditional claim arising from a plan participant's service." *Id.* Applying this definition, the *Rush* court held that if benefits remained subject to a condition precedent prior to the termination of the employment contract, those benefits are not vested. *Id.*

Similarly, the courts in *Rice v. Resolution Trust Corp.,* 785 F.Supp. 1385 (D.Ariz. 1992) and *Marsa v. Metrobank For Sav., F.S.B.,* 825 F.Supp. 658 (D.N.J.1993) followed the definition of "vested" as adopted by *Quinn* and held that rights are deemed vested if they are unconditional prior to the termination of the employment contract. *Rice,* 785 F.Supp. at 1388; *Marsa,* 825 F.Supp. at 663. This court agrees with the definition of "vested" as adopted by these courts.[9] Accordingly, the court finds that Crocker's claims are deemed "vested" if they were not subject to a condition precedent prior to the termination of employment. If the claims were conditional, however, they are deemed vested if the prescribed condition has been satisfied or triggered prior to the termination.

Application of that standard requires this court to grant summary judgment in favor of RTC with respect to Crocker's claim for the Consulting Period Fee ("Fee") of $250,000. Crocker's right to the Fee did not vest prior to June 5, 1992. Paragraphs 2(a), 8(a)(ii)(A) and 8(a)(ii)(B) provide that Crocker shall receive the Fee only if Crocker's employment was terminated *without cause by* Crocker himself or by Republic. Therefore, the right to the Fee was contingent upon termination from employment *without cause.*[10]

In order for the Fee to have been vested prior to June 5, 1992, Crocker must have been discharged without cause or resigned on or before June 4, 1992. The uncontroverted facts in the instant case, however,

---

**8.** 12 C.F.R. § 563.39 governs only employment contracts. Neither party contests the applicability of this section nor argues that specific provisions within the Agreement was not an employment contract. Notwithstanding the parties' assumption, the court finds that the disputed claims in this action arise out of an employment contract. The Agreement was the only contract that governed Crocker's employment at Republic.

**9.** Even if the court followed *Kulins v. Malco, a Microdot Company, Inc.,* 121 Ill.App.3d 520, 76 Ill.Dec. 903, 459 N.E.2d 1038 (Ill.Ct.App.1984), an Illinois opinion cited by plaintiff in his response brief, the definition of the term "vested" to be applied is essentially the same and will not change the opinion of the court. *See Kulins,* 459

N.E.2d at 1044; *see also Wilde v. First Federal Sav. and Loan Ass'n,* 134 Ill.App.3d 722, 89 Ill. Dec. 493, 499, 480 N.E.2d 1236, 1242 (Ill.Ct. App.1985).

**10.** If Crocker was terminated from his employment *with cause,* Crocker would have no right to compensation and benefits under the Agreement. Paragraph 8(a)(1) of the Agreement provides in relevant part that:

The Board may terminate Crocker's employment during the Term at any time for cause. Crocker shall have no right to receive compensation or other benefits hereunder for any period after termination for cause....

Agreement ¶ 8(a)(1).

reveal that Crocker was never terminated without cause from his employment. Rather, Crocker was terminated from his employment on June 5, 1993 by operation of law. Thus, RTC properly exercised its authority under 12 C.F.R. § 563.39 in rejecting Crocker's claim for the Fee in the amount of $250,000.

■ Likewise, RTC properly exercised its authority under 12 C.F.R. § 563.39 in disallowing Crocker's claim for executive bonuses for the years 1990 and 1992 in the amount in excess of $116,320. Paragraph 4(b) of the Agreement provides that "[Republic] *shall* also pay Crocker a bonus each year equal to four percent (4%) of the pre-tax earnings of [Republic]...." Agreement ¶ 4(b) (emphasis added). The terms of the Agreement do not subject Crocker's entitlement to the yearly bonus to any conditions other than Republic realizing profits. Literal interpretation of the Agreement establishes that the right to the bonus is unconditional. Nonetheless, the court must view this entitlement within the context of 12 C.F.R. § 563.39 and directives issued by OTS to determined if the right to bonus was "vested."

■ FIRREA created OTS to supervise and to enforce the comprehensive regulatory scheme and granted OTS the discretionary enforcement authority to supervise and regulate federal and state savings associations and savings and loan holding companies. *Gallagher,* 10 F.3d at 423; *see also United States v. Gaubert,* 499 U.S. 315, 319, 111 S.Ct. 1267, 1271 n. 1, 113 L.Ed.2d 335 (1991); 12 U.S.C. § 1462a(a). The primary function of OTS is to provide for "safe and sound operation, and regulation of savings associations" by issuing regulations and making determinations regarding the operations of savings associations. *See* 12 U.S.C. §§ 1462a(b), 1463(a)(1), 1463(a)(2), 1464(s). OTS possesses the power to "require savings associations to maintain adequate capital, using any methods OTS determines to be appropriate." *United Liberty Life Ins. Co. v.*

*Ryan,* 985 F.2d 1320, 1326 (6th Cir.1993); *see also* 12 U.S.C. § 1464(s)(1)(B).

On December 19, 1990, Republic's Board of Directors adopted a Unanimous Written Consent. *See* Deft.'s Mot.Sum.Judg.Ex. C at 1. The Unanimous Written Consent was entered and adopted because the OTS had directed Republic that "no bonus shall be paid to its officers or employees without the prior written approval of OTS." *Id.* Subsequently, on April 17, 1991, Republic consented to the Cease and Desist Order issued pursuant to 12 U.S.C. § 1818(b). Deft.'s Mot.Sum.Judg.Ex. E at 1. The relevant language of the Cease and Desist Order prohibited Republic from paying any bonuses to its officers and employees, unless prior written approval was obtained from OTS.

Crocker argues that his right to 1990 bonus "vested" prior to June 5, 1992 because the Unanimous Written Consent specifically states that his bonus payments were earned and that only the distribution of that payment was conditioned upon OTS' approval. Crocker's argument, when stripped to its essential, urges this court to ignore the directives of OTS and its authority and to recognize only the agreement between Republic and Crocker.

The court rejects Crocker's position. To simply adhere to the contractual agreement to determine whether certain rights are "vested" for purposes of 12 C.F.R. § 563.39, would require the court to abrogate the function of OTS and FIRREA. The court must view the contractual agreement in light of any OTS orders and mandates that were issued to sustain its broad power to stabilize the failing savings and loan industry. In the instant action, both the Unanimous Written Consent and the Cease and Desist Order emphatically impose a condition on Republic's distribution of bonuses. The condition precedent to the entitlement of bonuses was OTS' prior written approval. However, as Crocker admits in his 12(N) statement, OTS never approved bonuses for the years 1990 and 1992. Thus, Crocker's right to 1990 and 1992 bonuses were not "vested" within the meaning of 12 C.F.R. § 563.39 prior to June 5, 1992.

## CONCLUSION

For the foregoing reasons, RTC's motion for summary judgment is granted.

IT IS SO ORDERED.