865 F.Supp. 607 (1994)
Elmer Ernest ROMINES, et al., Plaintiffs,
v.
GREAT-WEST LIFE ASSURANCE COMPANY, et al., Defendants.
No. 4:92CV01812 GFG.
United States District Court, E.D. Missouri, Eastern Division.
October 12, 1994.
*608 Francis X. Duda, Anderson and Gilbert, St. Louis, MO, for plaintiffs.
Clark H. Cole, Keith A. Rabenberg, Armstrong and Teasdale, St. Louis, MO, for Great-West Life Assur. Co.
Joseph A. Colagiovanni, Jr., Peter W. Herzog, III, Associate, Bryan Cave, St. Louis, MO, for Progressive Ozark Bank.
Clark H. Cole, Armstrong and Teasdale, St. Louis, MO, for Great-West Life Annuity Ins. Co.

ORDER AND MEMORANDUM
GUNN, District Judge.
This matter is before the Court on various motions.
The parties do not dispute the relevant facts of this case. Plaintiff Ernest Elmer Romines was president and chairman of the board of directors of Progressive Federal Savings Bank (PFSB). During September on 1988, he agreed to accept payments from two annuities in exchange for signing a consulting contract with PFSB and taking an immediate $12,000 per year reduction in salary. On October 5, 1988, defendant Great-West Life Assurance Company (GWA) issued two single premium immediate annuities. The policies both named Romines as the annuitant/payee and PFSB as the owner. From November 1, 1988, until April 1, 1991, Romines received annuity payments from GWA.
During the fall of 1990, the Federal Deposit Insurance Company (FDIC) and the Office of Thrift Supervision (OTS) examined PFS *609 because of the bank's financial problems. On December 21, 1990, PFSB and OTS entered into a consent agreement which authorized OTS to pursue a supervisory merger candidate for PFSB. On March 7, 1991, an Assistant Director of OTS, Lyle Townsend, sent PFSB's board of directors a letter informing them that Romines' consulting agreement had been terminated by operation of law. A second letter dated March 21, 1991, from Townsend threatened to hold members of the board personally liable if Romines' consulting agreement was not cancelled. On April 3, 1991, PFSB requested that the beneficiaries and payee be changed on the annuity contracts. GWA honored this request and began making payments on both to PFSB and later to its successor, defendant Progressive Ozark Bank (POB).
Romines and his family subsequently filed suit to recover damages from defendants POB and GWA for amounts owing under the annuity policies. Defendant POB has filed a motion for summary judgment.
Because the consulting agreement in this case is an employment contract to which a federally insured savings association is a party, it contains several provisions mandated by federal law. One such provision required by OTS regulations states:
(b) Required provisions. Each employment contract shall provide:
....
(5) All obligations under the contract shall be terminated, except to the extent determined that continuation of the contract is necessary of [sic] the continued operation of the association
....
(ii) By the Director or his or her designee, at the time the Director or his or her designee approves a supervisory merger to resolve problems related to operation of the association or when the association is determined by the Director to be in an unsafe or unsound condition.
Any rights of the parties that have already vested, however, shall not be affected by such action.
12 C.F.R. § 563.39(b)(5)(ii) (1994). Defendant POB argues that it is not liable to plaintiffs because the consulting agreement was cancelled by operation of law. Defendants assert that in this case, OTS determined that PFSB was in an "unsafe or unsound condition."
Application of § 563.39(b)(5) requires a two-step inquiry. First, the Court must determine whether the employment contract was terminated by operation of law pursuant to one of the conditions outlined in the regulation. Second, if the Court determines that the contract was terminated, the Court must ascertain whether the employee's rights had previously vested. In this case, the Court finds that the consulting agreement was terminated by operation of law under § 563.39(b)(5)(ii) and that Romines' rights to the annuity proceeds had not already vested.
During the fall of 1990, both the FDIC and OTS determined in examination reports that PFSB was undercapitalized and in an unsafe and unsound condition. (Def.'s Exs. I, J). Therefore, PFSB properly invoked § 563.39(b)(5) to terminate Romines' consulting agreement by operation of law. Plaintiffs argue that § 563.39(b)(5) is only triggered when the Director of OTS determines in an official directive that a savings association is in an unsafe or unsound condition. The Court does not agree.
An interpretation of the regulation must begin with its plain language. Good Samaritan Hosp. v. Shalala, ___ U.S. ___, ___, 113 S.Ct. 2151, 2157, 124 L.Ed.2d 368 (1993). Nothing in § 563.39(b)(5)(ii) requires that the Director's determination be in the form of a directive. Furthermore, the Supreme Court has explained that "[w]hen construing the `plain meaning' of a statute, a court must read the particular statutory language at issue in light of the language and design of the statute as a whole." K Mart Corp. v. Cartier, Inc., 486 U.S. 281, 291, 108 S.Ct. 1811, 1817, 100 L.Ed.2d 313 (1988). Congress created OTS to regulate the savings and loan industry when it enacted the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA), Pub.L. No. 101-173, 103 Stat. 183 (1989) (codified in scattered sections of 12 U.S.C.). 12 U.S.C. § 1463(a)(1). OTS has broad discretionary *610 powers to "require all savings associations to achieve and maintain adequate capital by ... using any methods [OTS] ... determines to be appropriate." 12 U.S.C. § 1464(s)(1)(B). See also United States v. Gaubert, 499 U.S. 315, 329, 111 S.Ct. 1267, 1277, 113 L.Ed.2d 335 (1991); United Liberty Life Ins. Co. v. Ryan, 985 F.2d 1320, 1326 (6th Cir.1993).
In this case, OTS determined that a consent agreement would be the best way to address PFSB's problems. The agreement placed restrictions on PFSB's operations and provided for extensive OTS oversight during the search for a merger candidate. Furthermore, PFSB's board of directors, including Romines, recognized the bank's unsafe or unsound condition in the consent agreement. (Def.'s Ex. D at 1). Indeed, plaintiff Romines signed the agreement on behalf of PFSB. (Def.'s Ex. D at 14). Within the consent agreement, PFSB agreed that pursuant to § 1464(d)(2) grounds for the appointment of a conservator or receiver existed. (Def.'s Ex. D at 1). The agreement cites "substantially insufficient capital" as grounds for such an appointment. This language parallels that of § 1821(c)(5)(L)(ii), incorporated by reference at § 1464(d)(2), which states that an unsafe or unsound condition includes "substantially insufficient capital." 12 U.S.C. §§ 1464(d)(2), 1821(c)(5)(L)(ii).
OTS's determination that PFSB was in an unsafe or unsound condition is manifest in its examination report and in the consent agreement. Plaintiffs' contention that only a personal directive issued by OTS' Director triggers operation of § 563.39(b)(5)(ii) is incongruous with OTS' broad discretionary powers to fashion ways of solving the financial crises of savings associations. Therefore, the consulting agreement between Romines and PFSB was terminated by operation of law pursuant to § 563.39(b)(5)(ii).
The Court now turns to the issue of whether Romines' rights to the annuity payments had vested prior to the termination of the consulting agreement. Under the consulting agreement, Romines was entitled to receive annuity payments unless he was terminated for cause or resigned. (Consulting Agreement at ¶ 3).
For the purposes of § 563.39, a right is vested when the employee holding the right is entitled to claim immediate payment. Modzelewski v. Resolution Trust Corp., 14 F.3d 1374, 1378 (9th Cir.1994). In this case, Romines' rights to the annuity payments were conditioned on his termination without cause. That condition could not be fulfilled because obligations under the contract were terminated by operation of law.
A number of federal courts have held that when termination without cause is a condition precedent to the vesting of an employee's rights, no vesting occurs when his or her contract is extinguished by operation of law pursuant to § 563.39(b)(5). Crocker v. Resolution Trust Corp., 839 F.Supp. 1291, 1295 (N.D.Ill.1993); Barnes v. Resolution Trust Corp., 1992 WL 25203 at *3 (D.Kan. 1992); Rush v. Federal Deposit Ins. Corp., 747 F.Supp. 575, 578-79 (N.D.Cal.1990). Plaintiffs attempt to distinguish these cases by asserting that they involve the appointment of a receiver. Plaintiffs' argument ignores the two-step nature of this Court's inquiry. In the cases cited above, the employment contracts may have been terminated under § 563.39(b)(5)(i), rather than § 563.39(b)(5)(ii); however, this does not impact the persuasiveness of the courts' reasoning on the second prong of the analysis: whether the employee's rights had vested. Accordingly,
IT IS HEREBY ORDERED that defendant Progressive Ozark Bank's motion for summary judgment is granted.
IT IS FURTHER ORDERED that all other pending motions are denied as moot.