Frank J. **SORIERO**

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION, as receiver for Meritor Savings Bank.**

No. 94–1952.

United States District Court, E.D. Pennsylvania.

May 17, 1995.

---

Thomas J. Feeney, Michael F. Merlie, Kania, Lindner, Lasak and Feeney, Bala Cynwyd, PA, for plaintiff.

Jose L. Ongay, Philadelphia, PA, Mary Beth Sullivan, Fredric S. Singerman, Karla Grossenbacher, Seyfarth, Shaw, Fairweather and Geraldson, Washington, DC, for defendant.

## MEMORANDUM AND ORDER

BECHTLE, District Judge.

Presently before the court are the cross-motions for summary judgment of plaintiff Frank J. Soriero ("plaintiff") and defendant Federal Deposit Insurance Corporation ("FDIC"). For the reasons set forth below, the court will grant Soriero's motion for summary judgment and will deny the FDIC's motion for summary judgment. Judgment will be entered in favor of plaintiff and against the FDIC.

## I. BACKGROUND

This case involves a claim for supplemental pension benefits made by a former employee of a failed bank, against the FDIC, as receiver for the bank. Plaintiff brought suit pursuant to 12 U.S.C. § 1821(d)(2)(H) and 12 U.S.C. § 1821(d)(6) of the Financial Institutions Reform, Recovery and Enforcement Act ("FIRREA").[1] The parties have filed cross-motions for summary judgment and have agreed to a Joint Stipulation of Uncontested Facts.

Plaintiff began working for Philadelphia Savings Fund Society ("PSFS") in May, 1986, as vice-president for construction lending. (Stipulation at ¶ 4). On May 20, 1986, plaintiff and PSFS entered into a supplemental pension agreement (the "SPA"). (Stipulation at ¶ 5). The SPA was designed to augment plaintiff's standard pension plan by crediting plaintiff for his eight years of ser-

---

**1.** Section 1821(d)(2)(H) provides:

The [FDIC], as conservator or receiver, shall pay all valid obligations of the insured depository institution in accordance with the prescriptions and limitation of this chapter. 12 U.S.C. § 1821(d)(2)(H).

Section 1821(d)(6) provides that within sixty (60) days after the disallowance of a claim against a depository institution for which the FDIC is receiver, the claimant may:

file suit on such claim ... in the district ... within which the depository institution's principal place of business is located or the United States District Court for the District of Columbia (and such court shall have jurisdiction to hear such claim).

12 U.S.C. § 1821(d)(6)(A)(ii). The parties have stipulated that plaintiff's claim was disallowed on January 27, 1994. (Stipulation at ¶ 19). Plaintiff filed the instant suit on March 25, 1994, within the sixty (60) day statute of limitations.

vice with Industrial Valley Bank, his previous employer.[2] (Soriero Dep. at 17). By the terms of the SPA, PSFS agreed to provide plaintiff not only with his regular pension when he retired, but also a supplementary pension to be calculated as if he had joined PSFS on January 9, 1978, the day he joined Industrial Valley Bank. (*See* Pl.Mot. for Summary Judgment, Ex. 2 at ¶ 1). The SPA further provided that the "supplementary pension payable to or on behalf of [plaintiff] under this Agreement shall be paid in the same form and at the same time as the benefit payable ... to or on behalf of [plaintiff] under the Pension Plan." (*Id.*)

Several months after plaintiff began working at PSFS, PSFS became Meritor Savings Bank ("Meritor"). (Soriero Dep. at 13). Meritor succeeded to all of the rights and obligations of PSFS under the SPA. (Stipulation at ¶ 5).

On December 11, 1992, the Secretary of Banking of the Commonwealth of Pennsylvania seized Meritor, closed it, and appointed the FDIC as receiver. (Stipulation at ¶ 6). At that time, all Meritor employees, including plaintiff, ceased to be employed by Meritor. (Stipulation at ¶ 7). Three days later, on December 14, plaintiff elected to retire under the standard Meritor pension plan, effective January 1, 1993. (Stipulation at ¶ 10). Prior to the FDIC's appointment as receiver for Meritor, plaintiff had reached the age of 64 years, nine months and eighteen days which made him eligible to retire under the terms and conditions of Meritor's pension plan if he chose to do so. (Stipulation at ¶ 12). Plaintiff has been receiving benefits under the Meritor pension plan since then, and the FDIC does not contest plaintiff's right to such benefits. (Stipulation at ¶¶ 8, 10).

At the time the FDIC was appointed as receiver for Meritor on December 11, 1992, plaintiff was not entitled to receive benefits under the SPA because his employment with Meritor had not been terminated, and under the SPA, payment of benefits is conditioned on termination of employment. (Stipulation at ¶¶ 15–16). After retiring from Meritor, plaintiff filed a timely claim with the FDIC, requesting supplemental pension benefits under the SPA, pursuant to 12 U.S.C. § 1821(d)(3). (Stipulation at ¶ 18). The FDIC disallowed plaintiff's claim by letter of January 27, 1994. (Stipulation at ¶ 19). Plaintiff then commenced this suit seeking to compel the FDIC to pay him the sum of $103,563.50, which the parties agree is the present value of the benefits due plaintiff under the SPA if the court were to find in favor of plaintiff.[3] (Stipulation at ¶ 23).

## II. *LEGAL STANDARD*

The function of a motion for summary judgment is to avoid a trial in cases where it is unnecessary and would only cause delay and expense. *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir.1976), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977). In evaluating a motion for summary judgment, the court may examine the pleadings and other material offered by the parties to determine if there is a genuine issue of material fact to be tried. Fed.R.Civ.P. 56(c); *Sims v. Mack Truck Corp.*, 488 F.Supp. 592, 597 (E.D.Pa.1980). A fact is material if it might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

In considering a motion for summary judgment, the court must determine whether the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is a genuine issue of material fact, and thus whether the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893, 896 (3d Cir.1987) (en banc). An issue is "genuine" only if the evidence is such that a reasonable jury could find for the non-moving party. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513.

---

**2.** Plaintiff was employed with Industrial Valley Bank from January, 1978 until May, 1986 as its vice-president of construction lending.

**3.** The monthly benefit plaintiff would be entitled to under the SPA is $907.00. (Stipulation at ¶ 23).

■ Finally, Rule 56(e) does not allow the non-moving party to rely merely upon bare assertions, conclusory allegations or suspicions. *Fireman's Ins. Co. v. DuFresne,* 676 F.2d 965, 969 (3d Cir.1982). The non-moving party must offer specific facts contradicting the facts averred by the movant which indicate that there is a genuine issue for trial. *Lujan v. National Wildlife Fed'n,* 497 U.S. 871, 888, 110 S.Ct. 3177, 3188, 111 L.Ed.2d 695 (1990); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

## III. *DISCUSSION*

The parties agree that plaintiff had not, prior to the FDIC's appointment as receiver for Meritor, retired, given notice of retirement, or applied for or received any benefits under either the regular Meritor plan or the SPA. Plaintiff asserts, however, that his claim against the FDIC for supplemental pension benefits should be recognized, because at the time the FDIC was appointed as receiver for Meritor, his claim was sufficiently "fixed and certain" to pass muster under the established *"Kennedy* rule," which holds that in order to be recognized, claims against insolvent banks must be "unconditionally fixed on or before the time [the bank] is declared insolvent." *Kennedy v. Boston–Continental Nat'l Bank,* 84 F.2d 592, 597 (1st Cir.1936).

Plaintiff points to three federal cases to support his argument. In *Office & Professional Employees Int'l Union, Local 2 v. FDIC,* 27 F.3d 598 (D.C.Cir.1994), ("*OPEIU* "), the FDIC repudiated a collective bargaining agreement between a union and a failed bank pursuant to which the union members were entitled to severance pay if they were laid off for economic reasons. *Id.* at 600. After the bank failed and the FDIC was appointed receiver, the FDIC refused to honor the employees' claims. *Id.*

The Court of Appeals for the District of Columbia Circuit held that "[t]he employees had a right to severance pay as of the date of the appointment—albeit a contingent one— and that right should be treated essentially the same as the right to accrued vacation pay or health benefits." *Id.* at 601. "So viewed," held the *OPEIU* court, "the employees' right to severance pay is … 'vested.' " *Id.* The court noted, however, that "the value of the severance payments under the agreement should be discounted for the risk that the employees would not be discharged for economic reasons—for instance, that the employees would quit, retire, die, or be discharged for. misconduct." *Id.*

Similar to *OPEIU,* the district court in *LaMagna v. FDIC,* 828 F.Supp. 1 (D.D.C. 1993), held that a former bank executive's right to severance benefits "vested the day he and [the bank] reached their agreement," that the FDIC as receiver for the failed bank was "obligated to honor the severance payment provision of the employment agreement," and that the FDIC could not repudiate the employment contract under 12 U.S.C. § 1821(e). *Id.* at 3.

Lastly, in *Modzelewski v. Resolution Trust Corporation,* 14 F.3d 1374 (9th Cir.1994), the Court of Appeals for the Ninth Circuit confronted a case in which the RTC, after taking over a failed bank, terminated two executives and refused to pay them anything under their salary continuation agreements, which provided for certain monthly payments in the event of retirement, death, or termination without cause. *Id.* at 1375. The plaintiff executives sued the RTC under 12 U.S.C. § 1821(e)(3), claiming that they were entitled to damages because the RTC had repudiated their employment contracts. *Id.* The RTC countered that the obligations in the executives' contracts did not survive receivership because they were not "vested." *Id.* at 1376. The Ninth Circuit rejected the RTC's arguments and held that:

in order to be vested … rights need not be free of every contingency or possibility of divestiture. Rather, a right is vested when the employee holding the right is entitled to claim immediate payment. It's not material that the employee fails to make such a demand … so long as the decision not to claim payment lies entirely within his control.

*Id.* at 1378. Thus, the court found that the executive who had reached retirement age (but had not retired) before the RTC was appointed receiver had a vested right in his

severance benefits, while the other executive, who had not attained retirement age prior to the RTC takeover, did not have such a vested right. *Id.* at 1378–79.

Plaintiff points to these three cases to support his argument that although he had not retired prior to the FDIC becoming receiver for Meritor, his rights under the SPA were enforceable at the time of receivership and therefore his claim against the FDIC is provable.

FDIC, alternatively, argues that although the *Kennedy* rule is controlling, the cases which plaintiff cites are deviations from the standard interpretation of the *Kennedy* rule, and this court should not follow those cases. Further, argues the FDIC, the cases cited by plaintiff are not binding authority in the instant case because Meritor was a state bank, and thus plaintiff's claim is governed by Pennsylvania law, which supports the FDIC's contention that plaintiff's claim was not sufficiently "fixed and certain" prior to Meritor's dissolution.

■ As to the FDIC's latter contention, it is correct in stating that as receiver, it stands in the shoes of Meritor, which was a state bank, and therefore Pennsylvania law controls plaintiff's claim. *See O'Melveny & Myers v. FDIC,* —— U.S. ——, —— ——, 114 S.Ct. 2048, 2054–56, 129 L.Ed.2d 67 (1994) (under FIRREA, FDIC must "work out its claims under state law"). However, Pennsylvania law on the topic of vested pension rights is not extremely helpful to the determination of this case. The FDIC cites several state cases in its opposition to plaintiff's motion for summary judgment, but these cases essentially restate the accepted *Kennedy* rule. *See* Defendant's Opposition to Plaintiff's Motion for Summary Judgment at 6–7; *In re Emlen's Estate,* 333 Pa. 238, 4 A.2d 143, 147 (1939) (creditor's rights against a receiver are "fixed as of the date of the assignment of the receiver").

Plaintiff points to two Pennsylvania cases which do not deal directly with claims against a receiver for severance or pension benefits, but do provide some insight into the way a Pennsylvania court might rule on this issue. Most notably, plaintiff cites a passage from *In re Bell,* 339 Pa. 5, 14 A.2d 98 (1940), where the Pennsylvania Supreme Court stated:

> An obligation due the insolvent, *even though maturing after the insolvency,* may be set off against a debt due by the insolvent at the time of the declaration of insolvency. . . . In order that set-offs may be permitted *it is not necessary that the obligations should be liquidated in amount at the time the insolvency is declared, provided they then exist* and are capable of liquidation by a known legal standard. . . . But where an obligation at that time is neither due, nor liquidated, nor capable of liquidation by any known legal standard, nor enforceable in an action at law, it cannot be set off against an opposing claim.

*Id.* 14 A.2d at 100 (emphasis added; citations omitted). The *In re Bell* court seems to employ the same or similar reasoning as the federal courts in *OPEIU, LaMagna,* and *Modzelewski,* which bolsters plaintiff's assertion that his right to supplemental pension benefits was enforceable at the time of the FDIC takeover.

The strongest support for the FDIC's position that *OPEIU, LaMagna,* and *Modzelewski* represent deviations from the accepted *Kennedy* rule comes from two slip opinions from federal district courts in Connecticut and Florida. In *Freeman v. FDIC,* No. 3–93–400 (TGFD) (D.Conn. Apr. 21, 1994), the court held that benefits claimed from a former bank employee under a deferred compensation agreement "were not vested as of the date of the declaration of insolvency and appointment of the FDIC as receiver; therefore, under federal law, the plaintiff [could not] recover these benefits." *Id.* at 6. The problem with the FDIC's use of *Freeman* for support, however, is that the *Freeman* court cites the district court opinion in *OPEIU v. FDIC,* 813 F.Supp. 39 (D.D.C.1993), as authority for its holding, but the *OPEIU* district court was overruled by the D.C. Circuit Court on July 1, 1994. *See OPEIU,* 27 F.3d at 605.

Similarly, the District Court for the Southern District of Florida, in *Lipsitz v. FDIC,* No. 92–2678–CIV–UNGARO–BENAGES (May 18, 1994), disallowed a plaintiff's claims brought against the FDIC pursuant to a

supplemental retirement plan, stating that "because Plaintiff had not retired prior to the date [the FDIC] was appointed as receiver for [the failed bank], Plaintiff's right to benefits under the [supplemental retirement plan] had not become unconditionally fixed as of that date," and therefore, "Plaintiff's right to benefits under the [supplemental retirement plan] had not vested prior to that date...." *Id.* at 8. The *Lipsitz* court did not cite the district court's opinion in *OPEIU*. However, *Lipsitz*, like *Freeman*, was decided before the D.C. Circuit's *OPEIU* opinion in July, 1994, which directly contradicts the district court opinions in both *Lipsitz* and *Freeman*.[4]

 From the court's review of the parties' arguments and the relevant case law, the court concludes that plaintiff's rights were sufficiently "fixed and certain" to be provable against the FDIC at the moment the FDIC became the receiver for Meritor. It is clear that at the moment the FDIC took over, all of the contractual terms of the SPA had been agreed to, signed and accepted by both parties. As the parties stipulated, plaintiff had reached an age prior to the FDIC's receivership, where he could have retired had he chosen to do so. Plaintiff's right to supplemental pension benefits was contractual in nature in that Meritor could not have unilaterally rescinded the benefit without being exposed to damages. Under these terms, there was "value" to the benefits and such value rendered plaintiff's right sufficiently "fixed and certain" to be provable against the FDIC.

Another factor that is important in the court's analysis is that plaintiff entered into this contract with PSFS on May 20, 1986, which was six years before the FDIC took over. Plaintiff no doubt rendered considerable service to Meritor in that span and the contract was clearly an inducement for him to leave Industrial Valley Bank because the agreement gives him credit for his eight years at that bank. By the nature of the contract, PSFS/Meritor could not have unilaterally rescinded the agreement without

being exposed to damages for a breach of contract.

Although none of the cases cited by the parties are controlling authority, the court finds the reasoning of *OPEIU*, the most recent circuit court opinion related to these issues, to be persuasive in light of the particular circumstances of this case. Because plaintiff had an irrevocable, contractual right to the supplemental pension benefits upon his retirement, the court finds that his claim was enforceable at the moment the FDIC became receiver. Accordingly, the court will grant plaintiff's motion for summary judgment, and deny the FDIC's motion for summary judgment.

---

**4.** The FDIC also cites to *Hennessy v. FDIC*, 858 F.Supp. 483 (E.D.Pa.1994) to support its position that plaintiff's claim to the benefits are not due and owing. In *Hennessy*, however, the severance pay benefits which the plaintiffs were seeking were not contractual in nature. *Id.* at 487.