# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 03-3265

MAUREEN A. NAVARRO,

*Plaintiff-Appellant,*

v.

FEDERAL DEPOSIT INSURANCE CORPORATION,

*Defendant-Appellee.*

———————

Appeal from the United States District Court for
the Northern District of Illinois, Eastern Division.
No. 02 C 8972—**Charles R. Norgle, Sr.,** *Judge.*

———————

ARGUED APRIL 8, 2004—DECIDED JUNE 15, 2004

———————

Before KANNE, EVANS, and WILLIAMS, *Circuit Judges.*

EVANS, *Circuit Judge.* Maureen Navarro worked 39 years for the Universal Federal Savings Bank, starting as a part-time clerical assistant in 1963 and eventually becoming the president and chief executive officer of the firm in 1997. In her case here she has all the equities on her side, for the Federal Deposit Insurance Corporation (FDIC) (more on its involvement later) concedes that if she would have quit—just walked off the job—on June 26, 2002, she would be entitled to receive "deferred compensation" payments she earned under two agreements she had with Universal. But

because she showed up for work the next day, June 27, 2002, she's out of luck . . . and out of the money. So says the FDIC and the district court which dismissed Navarro's case on summary judgment.

During her employment, Navarro and Universal entered into two very modest deferred compensation agreements, the first in 1981 and the second in 1987. These agreements were offered to induce Navarro to continue working for Universal. The agreements provided payments to her upon her termination and, under certain circumstances, to her estate. The payment level was graduated, beginning one year after each contract was signed and reaching maximum payments after 15 full years of service. The clause at issue is the termination provision of each agreement. The 1981 provision provided in relevant part:

> If the Employee voluntarily or involuntarily termi-nates her present employment with the Association, for reasons other than death or retirement, she shall then be entitled to receive from the Association annual severance benefits . . . for a period of 10 years next following the date of such severance . . . .

This clause goes on to provide that if Navarro died within that 10-year period her estate would receive the balance of payments due. The agreement also specified that if Navarro retired at age 65 she would receive $5,000 per year for 10 years from Universal, and if she died prior to retire-ment her estate would receive the money.

The 1987 agreement called for additional payments of $5,000 per year upon Navarro's termination, death, or re-tirement, but the separation provision was worded slightly differently than the 1981 contract:

> In the event the Employee terminates employment for reasons other than death or retirement, she shall be entitled to receive from the Association annual sever-ance benefits, as set forth below . . . .

The provision goes on to specify that benefits will be paid for 15 years following Navarro's termination and that if she died during that 15-year period her estate would receive the balance of payments.

On June 27, 2002, the Office of Thrift Supervision (OTS) closed Universal and appointed the FDIC as receiver. As a result of the receivership, Navarro was terminated from her position as Universal's president and chief executive officer.

In August 2002, pursuant to the procedures established by the Financial Institutions Reform, Recovery and Enforcement Act (FIRREA), 12 U.S.C. § 1821(d), Navarro filed claims with the FDIC to recover what she believed were benefits she earned under her two agreements with Universal. The total she sought was $119,999.30, or $3,077 for each of the 39 years she worked at Universal.

The FDIC reviewed the claims and determined that Navarro was not entitled to any benefits under the agreements because Universal's obligations terminated on June 27, 2002, as a result of the receivership. Thereafter, Navarro filed this complaint, pursuant to 12 U.S.C. § 1821(d)(6)(A), seeking relief identical to the demands she made in her administrative claim. The issue before us, as it was before the district court, is whether Navarro's rights were "vested" under the agreements when the OTS closed Universal's doors.

Under 12 C.F.R. § 563.39, when the FDIC takes over as receiver upon default of a savings and loan, "all obligations under the [employment] contract shall terminate as of the date of default, but this paragraph (b)(4) shall not affect any vested rights of the contracting parties[.]" The term "vested" is not defined in the regulations, but the district court held that a right is vested under § 563.39 "if it is not subject to a condition precedent prior to the termination of employment." The district court found that the phrases "If the Employee voluntarily or involuntarily terminates

her present employment" in the 1981 agreement and "Employee terminates employment" in the 1987 agreement created conditions precedent requiring that Navarro take affirmative action to terminate her own employment before her rights could be vested. Because her employment was terminated when the FDIC took over as receiver, the court reasoned that Navarro did not take any action to terminate her own employment. Thus, the court held Navarro failed to fulfill a condition precedent, her rights were not vested, and she was not entitled to payment under either contract.

We review grants of summary judgment *de novo*. *Thiele v. Norfolk & W. Ry. Co.*, 68 F.3d 179, 181 (7th Cir. 1995). We construe all facts in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996).

Although the term "vested" is not defined in the regulations, the district court's definition is certainly reasonable. Black's Law Dictionary defines "vested" in part as "not subject to be defeated by a condition precedent." *Black's Law Dictionary* 1563 (6th ed. 1990).

The critical question thus becomes whether Navarro had to satisfy a condition precedent, i.e., take affirmative action to terminate her employment with Universal before her rights under the agreements "vested." Conditions precedent are generally disfavored; in resolving doubts about whether a contract contains a condition precedent, interpretations that reduce the risk of forfeiture are favored. *Restatement* (*Second*) *of Contracts* § 227(1) (1981).

Given this policy, and taking the contract as a whole, it is clear that no true condition precedent was intended by this language. If we read in the term "actively" prior to the phrase "voluntarily or involuntarily terminates," as the district court has done, we're left with an agreement which contradicts itself. The word "involuntary" means "done

contrary to choice" or "not subject to control of the will." *Merriam-Webster's Collegiate Dictionary* (11th ed. 2003). We can think of no way Navarro could simultaneously actively and involuntarily terminate her employment; the FDIC's example of Navarro reluctantly quitting because of a medical condition still involves her making a conscious choice. The "voluntarily or involuntarily" clause was written in the agreement to cover *all* situations in which Navarro's employment could conceivably come to an end. And Navarro at all times had full control of *when* she could begin receiving benefits. This is not the stuff of a true condition precedent.

This is not unlike the situation in *Soriero v. Federal Deposit Insurance Corporation, as receiver for Meritor Savings Bank*, 887 F. Supp. 103, 106 (E.D. Penn. 1995), where the court held that a "right is vested when the employee holding the right is entitled to claim immediate payment. It's not material that the employee fails to make such a demand so long as the decision not to claim payment lies entirely within his control." *Soriero* involved a plaintiff employee who signed an agreement which provided for supplemental pension. *Id.* at 104. The *Soriero* plaintiff was eligible to retire but had not applied for retirement before the FDIC took receivership of the bank. *Id.* at 105. The court found the plaintiff's interests in the supplemental pension were vested when the plaintiff became eligible for retirement, and as such, plaintiff's rights were "sufficiently 'fixed and certain' to be provable against the FDIC at the moment the FDIC became the receiver for Meritor." *Id.* at 108. Similarly, in *Modzelewski v. Resolution Trust Corporation*, 14 F.3d 1374, 1378 (9th Cir. 1994), the court stated, "It's not material that the employee fails to make such a demand—exposing himself to the risk of divestiture—so long as the decision not to claim payment is entirely within his control."

In deciding that the termination clauses created conditions precedent, the district court relied heavily upon its earlier decision in *Crocker v. Resolution Trust Corp.*, 839 F. Supp. 1291 (N.D. Ill. 1993). The contract in *Crocker*, however, was different, because it did not provide payment if the employee was terminated for cause; not being fired for cause was thus a condition precedent. *Id.* at 1295. Navarro's contract contained no such provision; she was entitled to payment even if she was fired for cause. The district court also bolstered its reasoning by stating Navarro claimed to lose her rights under the contracts if she were to die or retire. This ignores the provisions in both contracts clearly stating that Navarro or her estate were entitled to payment upon her death or retirement after she completed one year of service. Navarro completed that year of service, and so there were no further conditions required of her to vest her rights under the agreements. As we read it, Navarro's rights under the agreements actually "vested" every day she worked on the job. On June 26, 2002, her rights under the agreements through that day were "vested." She is entitled to receive the modest deferred compensation due her as of that day.

We understand the FDIC's desire to conserve savings and loan assets for creditors while keeping golden parachute money from unscrupulous executives who have run an institution into the ground to their own benefit. That is not, however, what happened here. These were modest agreements drawn up two decades before the institution defaulted, and Navarro's rights in them, we hold, were vested. To say she could have unquestionably received the benefits if she quit—or was fired for cause—on June 26 but that she cannot recover because she came to work on June 27 defies logic and common sense.

For the foregoing reasons, the judgment is REVERSED and REMANDED for further proceedings in accordance with this opinion.

A true Copy:

    Teste:

                            _____
                            *Clerk of the United States Court of*
                            *Appeals for the Seventh Circuit*